OPINION OF THE COURT
Stanley Gartenstein, J.
The enduring popularity of the Internal Revenue Service as a focus of protest during tax season highlights an intriguing issue of first impression: viz., when the appropriate District Attorney or Attorney-General declines to prosecute, does judicial approval of private prosecution confer prerogatives usually attached to representation of the People, including, as in this instance, the right to consent or withhold consent to an adjournment in contemplation of dismissal (ACD)? We hold in the affirmative.
the facts
Defendant is one of a group of tax protestors all of whom were issued universal summonses on April 9, 1981 for trespassing upon the facilities of the United States Internal Revenue Service at 120 Church Street in the County of New York. Because certain favorite targets for protest are seasonably overcrowded (viz., Internal Revenue Service during tax season; Pentagon on Veteran’s Day; White House during visits of foreign heads of State), procedures have been formulated to insure the exercise of free speech and assembly, while reasonably protecting public order and the safety of the general public, including that of the *871 protestors. The reasonableness of these regulations is not contested herein by the defense and the constitutional rights of free speech and assembly are not in issue.
The processes issued as aforesaid have been made returnable in the Summons Part of the Criminal Court, a part in which the District Attorney’s office traditionally elects not to appear. Because of this fact, Regional Counsel to the Internal Revenue Sérvice has appeared during all proceedings to date despite the fact that his standing to do so has not as yet been settled by judicial holding.
Because these prosecutions as a group present fascinating issues not ordinarily raised in the criminal courts, the case before us has been severed for trial and counsel have come to an informal understanding that the court’s rulings in the matter at bar will be dispositive of the other matters still sub judice.
PRIVATE PROSECUTIONS
The practice of allowing individuals to commence private prosecutions in the name of the State is a vestige of the English origins of American justice. (Cf. Sidman, The Outmoded Concept of Private Prosecution, 25 Amer U L Rev 754.) English common law rested on the notion that the best way to bring a public wrong to satisfactory resolution could be realized by vesting in the family of the wronged individual the right to pursue its own concept of vengeance. This practice predating the Norman conquest of 1066 was rooted in a belief that criminals were best punished through private warfare (cf. 2 Pollock and Maitland, History of English Law [2d ed, 1909], p 449). The foreseeable arising necessity of regulating private revenge — of placing a restraint upon the avenging party — ultimately led to the true beginnings of Anglo-American criminal procedure by establishing some civilized test to determine innocence or guilt (Sidman, The Outmoded Concept of Private Prosecution, 25 Amer U L Rev 754, 758). Not until the mid-nineteenth century agitation of the Reformers, a development in England which occurred after American jurisprudence was independently launched, did *872 dissatisfaction with private prosecutors[1] lead to establishment of the Office of Director of Public Prosecutions (Prosecution of Offenses Act, 1879, 42-3 Viet, ch 22) in 1879. This development in English law served the dual purpose of paying lip service to the concept of private prosecutions, while so severely curtailing its practice as to make it virtually academic (cf. Edwards, The Law Officers of the Crown, p 340, cited in Sidman, The Outmoded Concept of Private Prosecution, 25 Amer U L Rev 754, 760, n 41).
American courts vary in their holdings on this question. Points of view range from a complete prohibition against private prosecutions (McKay v State, 90 Neb 63) to reluctantly permitting them (State v Scott, 72 Idaho 202). In New York, there has always existed, by tradition, a Summons Part presided over by a Judge, in which private individuals may petition the court for a complaint commencing a private prosecution (People v Vlasto, 78 Misc 2d 419). At the same time, this practice traditionally looked to the discretion of the trial court on the question of whether or not the private prosecution could continue as such (People ex rel. Luceno v Cuozzo, 97 Misc 2d 871, 876). Neither of these practices appears to have any basis under the CPL. Additionally, prosecutions for petty offenses and minor crimes commenced by the issuance of a universal summons by police or other law enforcement personnel which are ordinarily not prosecuted by a District Attorney, are treated as private prosecutions under the law. There appears to exist an implicit recognition of these traditions with stare decisis limited to the validity of any conviction thus rendered in the light of the prosecutor’s responsibility as a public official for enforcement of some statutory scheme and the fairness of the trial itself vis-a-vis the self-restraints usually expected of the prosecutor as a quasi-judicial officer. (People v Czajka, 11 NY2d 253 [Deputy Town Attorney]; People v DeLeyden, 10 NY2d 293 [Deputy Sheriff]; People v Leombruno, 10 NY2d 900 [Village Attorney]; People v Schildhaus, 4 NY2d 883 [Assistant Corporation Counsel].) Noteworthy of these cases is the fact that prosecutions by a public official were conducted with the *873 implicit consent of the District Attorney albeit without his actual participation. As stated by Chief Justice Desmond, speaking for the majority in People v Van Sickle (13 NY2d 61, 62-63): “If there was before us for decision the much broader question as to the District Attorney’s rights and duties I would say that the courts as well as the District Attorney himself must obey the plain, clear mandate of subdivision 1 of section 700 of the County Law. That statute does not necessarily mean that the District Attorney or his deputy must be physically present at every criminal hearing in the county. However, it means at least that the District Attorney, as the elected representative of the People and charged with this responsibility, must carry the responsibility and must set up a system whereby he knows of all the criminal prosecutions in his county and either appears therein in person or by assistant or consents to appearance on his behalf by other public officers or private attorneys.” (Emphasis added.)
It has been held that by electing not to appear in the Summons Part, the District Attorney necessarily consents to prosecution by others within the meaning of Van Sickle (supra). (People v Citadel Mgt. Co., 78 Misc 2d 626).
A recently emerging second line of cases appears to concern itself with the discretion of the court as exercised in pre-judicial proceedings which have no sanction other than the existance of the traditional Summons Part where a Judge hears the complaints of a party claiming to be aggrieved and either orders a complaint drawn or “dismisses” the already nonexistent proceeding. Recent cases have, for the first time, placed this discretion in prejudicial proceedings under the ambit of appellate review. (People v Burgos, NYLJ, Sept. 2, 1980, p 5, col 1; People v Kissling, App Term, 1st Dept, Docket No. 48206/1981, July 7, 1981.) These cases, limited to the Appellate Term, First Department, spell out factors to be considered by the Judge in allowing a complaint to be drawn. But they are totally silent on the issue of whether or not the private prosecutor so authorized does so in the name of the People with the accompanying prerogatives thereof including the right to consent to an adjournment in contemplation of dismissal.
*874 LEAVE TO PROSECUTE
In exercising discretion on the question of allowing a private prosecution to continue as such, the court must look to three factors (People v Kissling, supra): (1) the underlying merit of complainant’s accusation; (2) the right of the accused to be prosecuted by one “not actuated by .an ulterior objective in obtaining a conviction” (citing Read v Sacco, 49 AD2d 471); and (3) the People’s interest in being adequately represented.
It seems clear that prosecution, absent participation of an Attorney-General or the local District Attorney, should be permitted where some public official charged with enforcement of a statutory scheme acts as “common-law” prosecutor. The reasoning behind the holdings cited seems to be a desire for the evolution of a consistent body of law and policy backed by prosecutorial discretion. The prerogatives of a District Attorney are at least partially rooted in public policy that law enforcement in a particular county be uniform. A corollary thereof is that this uniform enforcement serve as educational tool to citizens at large who must (a) conform to the evinced mode of acceptable behavior; (b) look to and have a right to expect conformity therewith from their neighbors; (c) ratify or reject this policy in the ballot box. In this light, when public policy is effectuated by prosecution — i.e., when a prosecution rises above the level of spite litigation or strictly private animosity of a de minimis nature, it should be permitted. Although the Internal Revenue Service has no technical standing to prosecute in its own name without prior court consent (cf. People v Kissling, supra), the educational value of this prosecution to the public at large is no less than when conducted by the District Attorney.
Another consideration is the standard of fairness which the courts have come to expect from District Attorneys as quasi-judicial officers. The danger that private litigants actuated by malice will turn a prosecution into a private vendetta is infinitestimal where a government instrumentality prosecutes. To be sure, this is not an absolute rule. Nevertheless, lacking any claim thereof here, the purpose of this prosecution is obviously public in nature to effectu *875 ate a recognizable objective. Accordingly, the prosecution may continue in its present form.
ADJOURNMENT IN CONTEMPLATION OF DISMISSAL
This cause having regularly come on for trial before the undersigned, a joint application to adjourn in contemplation of dismissal upon stated conditions has been presented for judicial approval. In delineating the requisite consents required as a threshold for judicial approval of this application, CPL 170.55 states in relevant part: “the court may, upon motion of the people or the defendant and with the consent of the other party * * * order that the action be ‘adjourned in contemplation of dismissal’ ”.
Clearly, the statute requires consent of “the People” who are represented in the criminal courts either by the Attorney-General or by the District Attorney. This representation is exclusive (County Law, § 927; Executive Law, § 63, subd 1) thus seemingly mandating denial of the application if neither office prosecutes. On the other hand, the statute governing criminal proceedings is but one of three[2] instances known to the law where an adjournment in contemplation of dismissal is authorized by a procedural statute. In neither of the other two, viz., a juvenile deliquency proceeding (Family Ct Act, § 749) or a child abuse proceeding (Family Ct Act, § 1039) does the law require any consent other than the petitioning or prosecuting party in person as opposed to the public legal officer charged with presenting the petition. Accordingly, a persuasive argument can be made for the proposition that the discretion vested in the Attorney-General or District Attorney by CPL 170.55 is a special recognition of the unique, nonreviewable discretion which both these prosecuting officers possess under the law, rather than a positive requirement that it be their consent exclusively which is required to support an application for adjournment in contemplation of dismissal. Where the prosecutor does not insist on these prerogatives and consents, by nonappearance in a cause of which he is held to be “aware” under People v Van Sickle (13 NY2d 61, supra) to prosecution by *876 another (cf. People v Citadel Mgt. Co., 78 Misc 2d 626, supra), he is deemed also to consent to the court’s recognition of the litigant as the ultimate party in interest as one authorized to consent to this application. This reasoning would recognize a uniform legislative scheme common to all three types of adjournments in contemplation of dismissal, and would at the same time, also recognize the special prerogatives of both statutory prosecutors. We so hold. The application before us is accordingly deemed to be supported by both requisite statutory consents and is accordingly granted on the conditions delineated on record.

. (See, e.g., 4 Works of Jeremy Bentham [Bouring ed, 1843], Voluntary Prosecutors, pp 385-406.)

. We make no reference to CPL 170.56, the so-called “marihuana ACD” which, although fitting the comments herein, is a specialized statute with a unique function.