OPINION OF THE COURT
Michael A. Gary, J.
At issue is whether a private prosecution for a crime, after *116 the District Attorney’s office declines to prosecute, constitutes a violation of the defendant’s rights to due process and equal protection, and, consequently, whether New York City Criminal Court Act § 50, as applied here, is unconstitutional.
I. PROCEDURAL HISTORY
On February 8, 1991, an altercation occurred between the defendant, Martine Benoit, and her landlord, Marie Franck, at Ms. Franck’s house where both parties lived. On that date, Marie Franck was arrested by the police and charged in a felony complaint with assaulting Ms. Benoit. At her arraignment, Marie Franck was assigned Legal Aid counsel and released on her own recognizance. The case was adjourned for Grand Jury action. Shortly thereafter, Ms. Franck went to the New York City Criminal Court’s Summons Part at 346 Broadway in New York County where a clerk prepared a misdemeanor complaint on her behalf charging Martine Benoit with the crimes of assault in the third degree (Penal Law § 120.00 [1]), criminal mischief in the fourth degree (Penal Law § 145.00 [1]), menacing (Penal Law § 120.15) and harassment as a violation (Penal Law § 240.25 [5]) — all of which was allegedly based on the same February 8th incident for which Ms. Franck herself had been previously charged.
Next, Ms. Franck appeared before a Judge of the Criminal Court in Kings County, swore to the truth of her complaint and received a summons to serve on Martine Benoit to secure her appearance in this court. The Judge who issued the summons for the defendant was unaware that Ms. Franck had already been arrested for the very same conduct of which she accused Ms. Benoit. In fact, the summons clerk’s intake sheet merely indicates that Ms. Franck was referred to the Summons Part by her attorney and that she refused mediation.[1]
As a result of being served with the summons, the defendant appeared in this court with her attorney and was arraigned. Ms. Franck and her attorney were present at the defendant’s arraignment. At arraignment, the court was advised that Ms. Franck had been indicted by a Kings County *117 Grand Jury for assault in the second degree and criminal possession of a weapon in the fourth degree for allegedly assaulting the defendant on February 8, 1991. Since this was the first time the District Attorney’s office had an opportunity to review the summons-initiated case in light of the pending indictment, the court inquired if the People were going to assume prosecution of the defendant. Counsel for Ms. Franck submitted a motion and affirmation requesting that the District Attorney’s office not be permitted to dismiss this prosecution and for an adjournment to allow her to move in Supreme Court for the appointment of a Special Prosecutor. (See, County Law § 701.)
The People consented to an adjournment and filed a written response to Ms. Franck’s motion. The response reads, in pertinent part: "The People’s position concerning People v. Benoit, 91K008301, is that the People have not assumed prosecution of this matter. Furthermore, the People will not assume prosecution of this matter in the future. The People have no position concerning the appointment of a special prosecutor.”
In light of the People’s response, the case was adjourned again but this time for action on Ms. Franck’s motion for a Special Prosecutor. Defendant’s counsel was directed to file all appropriate motions by the adjourned date. On that date, Ms. Franck’s attorney reported that her motion for a Special Prosecutor was denied by Supreme Court.[2] Meanwhile, defendant’s counsel filed a written motion to dismiss pursuant to CPL 170.30 (f). Specifically, defendant argues that if Ms. Franck is allowed to prosecute, the defendant will be deprived of the many constitutional safeguards to a fair trial that other defendants who are prosecuted by the District Attorney enjoy. In essence, defendant asserts that New York City Criminal *118 Court Act § 50 is unconstitutional as applied to her since a private prosecution based on this statute results in a violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Counsel for Marie Franck acknowledged it would be improper for her to assume the prosecutor’s role by responding to defendant’s motion to dismiss. Since the defendant challenged the constitutionality of New York City Criminal Court Act § 50, this court notified the Attorney-General’s office to allow it an opportunity to intervene. (See, Executive Law §71; CPLR 1012 [b].) The Attorney-General’s office has declined, in writing, to intervene at this stage of the proceedings and this court has therefore addressed the merits of the defendant’s motion.
II. NEW YORK CITY CRIMINAL COURT ACT § 50
While numerous decisions describe the summons and complaint process authorized by New York City Criminal Court Act § 50 and the operation of the Summons All Purpose Part (SAP) in the Criminal Courts of the City of New York (see, e.g., People v Vial, 132 Misc 2d 5 [1986]; People v Vlasto, 78 Misc 2d 419 [1974]), this court’s research disclosed no published decision examining the statute itself.
New York City Criminal Court Act § 50 reads as follows:
"Complaints; not to be prepared in courtroom
"Provision shall be made at all times in each part of the court in which a judge is sitting as a magistrate whereby the clerk, the clerk’s assistants or other employees whose duty it is to prepare complaints shall have proper accommodations and the necessary room or rooms separate from but convenient to the room in which the court is held, and therein shall be at all times conspicuously posted a notice legibly printed in English, Spanish, Italian and Yiddish, respectively, and such other language as a rule or order of court shall prescribe, to the effect that any person to whom permission is refused to make and verify a complaint and who is thereby aggrieved will be heard upon application to the judge in person before the closing of the pending session of the court. It shall be the duty of each such judge before opening and again before closing a session to cause to be intelligibly announced to all persons in and about his courtroom that the court will then and there hear all complaints which have not been taken by the complaint clerk.”
The legislative history of section 50 reveals that in 1908 the *119 Legislature appointed a commission (known as the Commission to Inquire into the Courts of Inferior Criminal Jurisdiction in Cities of the First Class [Commission]) to investigate the lower courts of criminal jurisdiction in New York City. The Commission filed a Preliminary Report in 1909 and a Final Report in 1910. (See, Preliminary Report of Commn to Inquire into Cts of Inferior Crim Jurisdiction in Cities of First Class, NY Assem Doc, 132d Sess, vol 25, No. 34 [Feb. 8, 1909]; Final Report of Commn to Inquire into Cts of Inferior Crim Jurisdiction in Cities of First Class, NY Assem Doc, 133rd Sess, vol 26, No. 54 [Apr. 4, 1910].) These reports led to the passage of the Inferior Criminal Courts Act, including the original version of New York City Criminal Court Act § 50. (See, L 1910, ch 659, art IV, § 58; L 1933, ch 746, § 8.)
In its examination of the Magistrates Courts, as they existed before 1910, the Commission found that the courts were noisy, overcrowded, and lacked any semblance of judicial procedure. The effect of which was that the Commission found that the defendant could not hear the proceedings against him. (See, Commn’s Final Report, op. cit, at 12-13.)
The Commission recommended reorganization of the courthouse facilities, including "[provision for the complaint clerks in a room separate from the courtroom”. All of these measures were instituted to "enable the defendant in all cases to have the same opportunity to be heard as the complainant.” (Commn’s Final Report, op. cit., at 85; emphasis added.) Viewed in its historical context, the statute did clearly benefit the defendant at a time when, among other things, all complaints were sworn to before the court (see, People v Minuto, 71 Misc 2d 800 [1972]), and there was no right to counsel.
III. TASK FORCE FINDINGS
New York City Criminal Court Act § 50 and the summons and complaint process it authorizes was critically scrutinized in the Report of the Task Force on the Civilian-Initiated Complaint Process in the New York City Criminal Court ([Task Force], June 1989). Describing section 50 as an "antiquated provision,” the Task Force report recommended its repeal.[3] (Task Force, op. cit., at 30, n 15.) The report found the existing system to be deficient in almost every respect.
*120 The report noted that lack of prosecutorial involvement erodes confidence in the criminal justice system. "The decision to prosecute must rest with professional assistants of duly elected prosecutors who can properly evaluate the merits of a case and who represent the interests of the People of the State of New York. Either a case warrants prosecution or it should not be brought in Criminal Court. The alternative is to allow any individual to use a criminal case to pursue his or her own personal aims. This practice undermines justice and the appearance of justice and it erodes the public’s confidence in the criminal justice system.” (Task Force, op. cit., at 31.)
Furthermore, the existing system diminishes the authority and credibility of the judiciary. "In the absence of prosecutors and defense attorneys on summons cases, judges often assume these functions, thus causing, at the very least, an appearance of impropriety * * *. [MJany judges * * * limit the sanctions they impose to convictions for violations and non-jail sentences even if they believe a defendant is guilty of a crime and that a sentence of incarceration might be appropriate. This phenomenon tends to delay and trivialize these cases thereby undermining the credibility of the judiciary and the entire criminal process.” (Task Force, op. cit., at 33-34.)
IV. PRIVATE PROSECUTION IN NEW YORK
The custom of allowing individuals to prosecute in the name of the State has its origins in English common law. (See, People v Birnberg, 112 Misc 2d 870 [1981].) However, in New York, since the Constitutional Convention of 1777, the Attorney-General was the chief law enforcement officer responsible for the prosecution of all persons charged with criminal offenses. In the beginning of the 19th century, the office of the District Attorney was created by statute. (See, People v Vlasto, 78 Misc 2d 419, 421-422, supra.) Since then, the District Attorney has been charged with the duty to prosecute crimes and offenses. (See, County Law § 700 [1]; § 927; cf., People v Black, 156 Misc 516 [1935]; People v Scharer, 185 Misc 616 [1945]; People v Wyner, 207 Misc 673 [1955].)
In People v Van Sickle (13 NY2d 61 [1963]), the Court of *121 Appeals concluded that a criminal conviction for assault in the Court of Special Sessions in Orange County need not be reversed solely because the lay complaining witness conducted the prosecution. Chief Judge Desmond, writing for the majority, emphasized that the only question presented on appeal was the propriety of the prosecution by the complainant. Addressing the broader question of the District Attorney’s duties, the majority reasoned: "[County Law § 700 (1)] does not necessarily mean that the District Attorney or his deputy must be physically present at every criminal hearing in the county. However, it means at least that the District Attorney, as the elected representative of the people and charged with this responsibility, must carry the responsibility and must set up a system whereby he knows of all the criminal prosecutions in his county and either appears therein in person or by assistant or consents to appearance on his behalf by other public officers or private attorneys.” (People v Van Sickle, supra, at 62-63.)
In his concurrence, Judge Van Voorhis disagreed with the majority’s position on the duties of the District Attorney. He cited a lack of sufficient staff in many county District Attorney’s offices to appear in all the lower courts. (People v Van Sickle, supra, at 64.) As to the only issue presented, Judge Van Voorhis set forth the standard for judging the fairness of a private prosecution by a layperson: "We consider that a complaining witness has prima facie the right to conduct such a prosecution if the District Attorney does not do so, but must abide by the same rules of fairness and of law which would bind a public law officer if he were present.” (People v Van Sickle, supra, at 65.)
The Appellate Division in Read v Sacco (49 AD2d 471 [1975]) applied Van Sickle’s fairness standard to another assault conviction also obtained in Orange County. Ruling on whether the conviction should be given collateral estoppel effect in a civil action for assault and battery, the Read court considered the defendant’s claim that his prosecution by the attorney representing the plaintiff in the civil action was unfair because the prosecutor was not disinterested. In considering the effect of County Law § 700 on the prosecution, the Appellate Division reiterated Van Sickle’s concern that the District Attorney lacked sufficient staff. (Read v Sacco, supra, at 475.)
In assessing the fairness of the trial, the Read court emphasized the defendant’s failure to object to the prosecution by *122 the complainant’s civil attorney. It disapproved of the practice of an attorney representing a plaintiff in a civil action also acting as a prosecutor of the defendant in a criminal proceeding arising out of the same subject matter. The Read court warned, "[t]he conflicts implicit in such a case may create a course of conduct prejudicial to the defendant and violate the dictates of due process.” (Read v Sacco, supra, at 476.) Nonetheless, the Appellate Division ruled that prosecution by a private attorney did not violate due process under the circumstances in that case. (Read v Sacco, supra; see also, People v Vial, 132 Misc 2d 5, supra [prosecution for a violation]; contra, People v Vlasto, supra; People ex rel. Luceno v Cuozzo, 97 Misc 2d 871 [1978] [prosecution for a traffic offense].)
V. PRIVATE PROSECUTION OUTSIDE OF NEW YORK
Jurisdictions which allow private prosecutions based on their case law or State statutes all have one common characteristic — the private prosecutor is always an attorney who merely assists the public prosecutor and it is the public prosecutor who actually remains in control of the case. (See, e.g., Cantrell v Virginia, 229 Va 387, 329 SE2d 22 [1985], and cases cited therein; see also, 22A CJS, Criminal Law, § 457 [e] [1961]; Note, Private Prosecution — The Entrenched Anomaly, 50 NC L Rev 1171 [1972].)
Where a private prosecutor assumes control of the prosecution he or she is held to the same standard as the public prosecutor. In Ganger v Peyton (379 F2d 709 [4th Cir 1967]), the private attorney representing the Commonwealth of Virginia and prosecuting the defendant in his criminal case was at the same time representing the defendant’s wife in a divorce proceeding. In the criminal action, the defendant was convicted of assaulting his wife. On the appeal of a grant of habeas corpus relief, the Fourth Circuit considered the fact that the private prosecutor had offered to drop the assault charge if the defendant would make a favorable property settlement in the divorce. (Ganger v Peyton, at 712-713.)
The court concluded, "[w]e think the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of Ganger, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment.” (Ganger v Peyton, supra, at 714; see also, Hughes v Bowers, 711 F Supp 1574 [ND Ga 1989] [private prosecutor failed to disclose Brady material].)
*123 VI. THE DEFENDANT’S DUE PROCESS AND EQUAL PROTECTION ARGUMENTS
A. Due Process
In addressing defendant’s due process and equal protection claims, analysis must begin with the application of Van Sickle’s standard. Thus, Marie Franck "must abide by the same rules of fairness and of law which would bind a public law officer”. (People v Van Sickle, 13 NY2d 61, 65, supra; see also, Ganger v Peyton, supra.) Of primary concern is the fact that defendant here rigorously objects to her prosecution by Ms. Franck. (Compare, Read v Sacco, supra.) Moreover, this court must also recognize that the "rules of fairness and of law” applicable to a public prosecutor have multiplied rapidly since the Van Sickle decision. Indeed, scarcely two months after the decision in Van Sickle was rendered, the United States Supreme Court decided Brady v Maryland (373 US 83 [1963]), thereby imposing on the prosecutor the duty to turn over evidence favorable to the accused on the issue of either guilt or punishment. Under the circumstances of this case, all aspects of Marie Franck’s felony prosecution constitute Brady material to which the defendant is entitled. Begging the rhetorical question of who advises Ms. Franck as to what her prosecutorial obligations are, neither this court nor she, as a private individual, are entitled to access to the District Attorney’s file.[4] In the same vein, unless Ms. Franck advised the court or defense counsel, no one would know if she filed a complaint report with the police regarding the February 8th incident, for which failure to turn over such report to the defendant would constitute a Rosario violation and necessitate automatic reversal of any conviction obtained. (People v Ranghelle, 69 NY2d 56 [1986].)
Not having spoken to Ms. Franck directly but only through her counsel on her felony case, the only indication this court has concerning her position on this prosecution is, not surprisingly, that she avidly desires to prosecute! However, as defendant suggests in her motion to dismiss and this court so finds, "[t]he complaint in this case is a tactic to delay prosecution and to pressure Ms. Benoit into withdrawing her charges of *124 Assault” (Task Force, op. cit., at 9-10). Consequently, the defendant here is deprived of even the semblance of the exercise of prosecutorial discretion (Ganger v Peyton, supra; 50 NC L Rev, op. cit., at 1177-1178), and the conflicts implicit in this private prosecution violate due process. (Read v Sacco, 49 AD2d 471, 476, supra.)
B. Equal Protection
Defendant’s equal protection argument rests on the premise that she is entitled to prosecution by a disinterested public prosecutor, and not an interested private one. In People v Zimmer (51 NY2d 390, 393 [1980]), the Court of Appeals described the pivotal role of the public prosecutor in the criminal justice system as follows: "Unlike other participants in the traditional common-law adversarial process, whose more singular function is to protect and advance the rights of one side, a District Attorney carries an additional and more sensitive burden. It is not enough for him to be intent on the prosecution of his case. Granted that his paramount obligation is to the public, he must never lose sight of the fact that a defendant, as an integral member of the body politic, is entitled to a full measure of fairness. Put another way, his mission is not so much to convict as it is to achieve a just result (Berger v United States, 295 US 78,88; People v Petrucelli, 44 AD2d 58,59; Code of Professional Responsibility, EC 7-15).”
The Zimmer court dismissed an indictment obtained by a District Attorney against a defendant who had allegedly stolen moneys from a corporation of which the District Attorney was both a stockholder and counsel. The court ruled it was enough that a conflict of interest had been shown without a showing of actual prejudice to the defendant. Echoing Ganger v Peyton (379 F2d 709, supra), which it cited approvingly, the Court of Appeals observed: "Aside from his financial interest as a stockholder, as counsel to the corporation the District Attorney was its spokesman in legal matters, of which this was one. Assuming he intended to be as fair and objective as fair could be, in presenting this evidence where did his role as partisan corporate attorney end and where did that of nonpartisan District Attorney begin? At what point was he serving which of his two masters? To put the questions is to state the problem, a problem instinct with due process implications.” (People v Zimmer, supra, at 395.)
Accordingly, since Zimmer (supra) dictates that a public *125 prosecutor must be disinterested, continued prosecution of the defendant here by Ms. Franck, whose interest in the prosecution is beyond peradventure, would violate both the defendant’s due process and equal protection guarantees.
C. Policy Argument
Notably, both the Court of Appeals in Van Sickle (13 NY2d 61, supra), and the Appellate Division in Read v Sacco (supra), emphasized that because many county District Attorneys’ offices were insufficiently staffed to appear at all the prosecutions conducted in the lower courts, complainants were forced to handle the prosecutions themselves or hire private attorneys for that purpose. However, in each instance, the courts construed the scope of section 700 (1) of the County Law. That statute is State-wide in scope and covers both full- and part-time District Attorneys with both large and small offices. (See, County Law § 700 [8]; People v Zimmer, supra.) By contrast, private prosecutions commenced pursuant to New York City Criminal Court Act § 50 may be construed with respect only to County Law § 927, and not to County Law § 700. This is because section 927 imposes the duty to prosecute only on the District Attorneys of the five counties that comprise New York City — the same jurisdiction of the Criminal Court Act. These counties have full-time District Attorneys whose full-time staffs, except for Richmond County, are comprised of literally hundreds of Assistant District Attorneys who staff all the lower courts in their respective counties. Accordingly, the policy argument for allowing private prosecutions in Van Sickle is absent here.
VII. CONCLUSION
New York City Criminal Court Act § 50 clearly allows a private citizen to set in motion a prosecution for a crime unbeknownst to any prosecuting official or the accused. While this statute may have been enacted for the benefit of the defendant, the previously discussed findings of the Task Force clearly demonstrate that section 50 no longer serves its original purpose. More to the point, section 50, as applied here, permits a private prosecution of a crime by a citizen complainant after the local District Attorney’s office has declined to accept prosecution. This court can find no other jurisdiction which permits such a procedure. Moreover, the only analogous private prosecutions in other jurisdictions are those where private attorneys merely assist the public prosecutors.
*126 This critical distinction between New York’s private prosecution and those of other jurisdictions is compelling. The public prosecutor in other jurisdictions accepts prosecution of the cases and controls their destiny. Indeed, in contrast to the procedure authorized by section 50, private prosecutors outside of New York do not even have the ability to initiate the prosecution. (See, Cantrell v Virginia, 229 Va 387, 393, 329 SE2d 22, 26, supra.)
Prosecution by a disinterested prosecutor is a fundamental aspect of due process that this defendant would be deprived of if this private prosecution is allowed to continue. Indeed, CPL 1.20 (1) provides: "Every accusatory instrument, regardless of the person designated therein as accuser, constitutes an accusation on behalf of the state as plaintiff and must be entitled 'the [Pjeople of the [Sjtate of New York’ against a designated person, known as the defendant.”
The phrase "the People of the State of New York” embodies the concept that it is the State, through its public officials, which seeks to do justice on behalf of all of its citizens — both the victims and accused. Therefore, a prosecution for a crime by a private citizen pursuant to New York City Criminal Court Act § 50 after the People’s representative — the local District Attorney, has declined to prosecute, makes a mockery of the criminal justice system by attempting to utilize the court for private ends.
This court is well aware of the strong presumption that legislative enactments are constitutional (see, Cook v City of Binghamton, 48 NY2d 323, 330 [1979]; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 150, at 314-320 [1971]). Nonetheless, the foregoing analysis clearly establishes that New York City Criminal Court Act § 50, as applied here, is unconstitutional and violative of the Due Process and Equal Protection Clauses of the US Constitution’s Fourteenth Amendment. Moreover, since the issue here is the constitutionality of a State criminal statute, and since New York has historically provided broader protections in the area of fairness of criminal proceedings than that accorded by the Federal Constitution (see, People v P. J. Video, 68 NY2d 296; People v Alvarez, 70 NY2d 375), section 50, as applied here, is also violative of the Due Process Clause of the State Constitution (NY Const, art I, § 6).
Accordingly, defendant’s motion to dismiss is granted.

. In 1988, over 36,000 prosecutions were initiated by civilian complaints in the Criminal Courts of the City of New York. Over 20,000 of these cases were diverted to alternative dispute resolution (which are various forms of conciliation, mediation and arbitration, often referred to as "ADR”). The other 16,000 cases remained in Criminal Court. (See, Report of Task Force on Civilian-Initiated Complaint Process in NY City Crim Ct [June 1989].)

. It should be noted parenthetically that in her affirmation in support of an adjournment to move for a Special Prosecutor, Ms. Franck’s attorney alleged, in essence, that the District Attorney faced a "conflict of interest” in deciding whether or not to prosecute here based on the pending indictment of Ms. Franck. Counsel asserted that based upon her own investigation and interview of witnesses, the police investigation of the incident was faulty. However, counsel failed to mention in her papers a request that the Grand Jury hear any of the witnesses she interviewed and she conceded that her client did not testify before the Grand Jury.
This court also notes the frustration and delay caused by its lack of authority to determine the merits of a motion for the appointment of a Special Prosecutor in a summons-initiated case involving what amounts to cross complaints. (See, People v Infante, NYLJ, June 18, 1991, at 23, col 3.)

. Contra, Davis, The Crime Victim’s "Right” to A Criminal Prosecution: A Proposed Model Statute For the Governance of Private Criminal Prosecutions, 38 De Paul L Rev 329 (1989), which was published shortly before the Task Force report. This article suggests a statute modeled on New York City *120 Criminal Court Act §50 to govern the initiation and litigation of private criminal prosecutions. Unfortunately, the article did not address the constitutionality of private prosecutions. However, the author does suggest in the proposed statute that a private prosecutor be held to the same ethical standards that a District Attorney must obey. (See, Davis, op. cit, at 408.)

. If the Grand Jury minutes in the Franck case (see, People v Franck, Kings County, Indictment No. 1767/91) reflect that Martine Benoit testified without a waiver of immunity concerning the incident for which she stands charged here, this prosecution is barred. (See, CPL 190.40 [2]; 170.30 [1] [b].)