Mitch EISENBERG, Plaintiff,

v.

DISTRICT ATTORNEY OF the COUNTY OF KINGS; The Board of Education of the City of New York, County of Kings; The City of New York, John Doe, Joseph Doe, Richard Doe and Joyce Provenzale, Defendants.

No. CV–93–1647.

United States District Court, E.D. New York.

April 1, 1994.

**1030**

Joseph Solow, Hauppauge, NY, for plaintiff.

Jodi L. Mandel, Asst. Dist. Atty., Brooklyn, NY, Vernon A. Blair, Asst. Corp. Counsel, New York City, for defendants.

Joyce Provenzale, pro se.

### MEMORANDUM AND ORDER

GLASSER, District Judge:

Defendant District Attorney of the County of Kings (the "District Attorney") premises his motion to dismiss the Complaint on two grounds: (1) that service of process was improper, and (2) that the Complaint fails to state a claim upon which relief can be granted. Plaintiff Mitch Eisenberg, in turn, cross-moves for entry of a default judgment; to amend the Complaint; and to disqualify the District Attorney from representing himself. For the reasons set forth below, the motion to dismiss is granted, and the three cross-motions are denied.

1. The other defendant, Joyce Provenzale, appar-

### PROCEDURAL HISTORY

The facts surrounding the service of the Summons and Complaint upon the District Attorney are a matter of some dispute and form the basis for the District Attorney's motion to dismiss pursuant to Fed.R.Civ.P. 4(j) and plaintiff's cross-motion for entry of a default judgment pursuant to Fed.R.Civ.P. 55. The chronology of events, as drawn from both sets of papers, is as follows.

Plaintiff commenced this action by filing a Complaint on April 14, 1993. He alleges that he attempted service of the Summons and Complaint upon all defendants by mail on April 21, 1993. Affidavit in Support of Joseph A. Solow, Sworn to Jan. 14, 1994 ("Solow Aff.") ¶ 3. Plaintiff's counsel Mr. Solow avers that he received a telephone call from John Woods of the Office of the Corporation Counsel for the City of New York (the "Corporation Counsel") on May 11, 1993, during the course of which Mr. Woods acknowledged receipt of service and advised him that the Corporation Counsel was representing the District Attorney, as well as defendants the Board of Education of the City of New York (the "Board"), the City of New York (the "City") and the County of Kings (the "County"). Solow Aff. ¶ 3.[1] Plaintiff's counsel memorialized this conversation in a letter to Mr. Woods dated May 17, 1993. Solow Aff. Ex. B. However, after receiving no further response from the Corporation Counsel, Mr. Solow sent a second letter to Mr. Woods on July 1, 1993, requesting that Mr. Woods forward written acknowledgment of service "on behalf of the municipal defendants in confirmation of your representations regarding same given to me during our telephone conversation of May 11, 1993 as already confirmed from my end by letter to you of May 17, 1993." Solow Aff. Ex. C. The Corporation Counsel thereafter acknowledged receipt of service by the "Municipal defendants" by letter dated July 23, 1993. Solow Aff. Ex. D.

For reasons which he does not explain, plaintiff then effected personal service of the Summons and Complaint upon all defendants on August 11, 1993. Solow Aff. ¶ 4. Both

ently is proceeding *pro se*.

plaintiff and the District Attorney agree, and the affidavit of service reflects, that the Corporation Counsel was served on behalf of the District Attorney. Affidavit of Jodi L. Mandel, Sworn to Dec. 29, 1993 ("Mandel Aff.") ¶ 2 & Ex. B. Mr. Solow alleges that the following day, Vernon Blair of the Corporation Counsel telephoned him to request a further extension of time to answer the Complaint on behalf of the District Attorney, the Board, the City and the County, and also advised him of a potential conflict of interest due to the Corporation Counsel's representation of both the District Attorney in the present action and the plaintiff in the underlying criminal proceeding. Solow Aff. ¶ 5. Plaintiff acceded to the request for an extension of time. Solow Aff. ¶ 5.

On October 15, 1993, at an initial conference before Magistrate Judge Go, the Corporation Counsel advised the Magistrate of its potential conflict of interest, and the Magistrate extended all defendants' time to answer until November 15, 1993. Solow Aff. ¶ 6. Plaintiff alleges that on November 15, he was advised by the Corporation Counsel that it would not be representing the District Attorney. Solow Aff. ¶ 7. The Corporation Counsel subsequently filed an Answer to the Complaint on December 9, 1993, on behalf of the Board, the City and the County. Solow Aff. ¶ 7; Mandel Aff. ¶ 6.

The District Attorney alleges that he first received a copy of the Complaint on or about November 12, 1993, when the Corporation Counsel forwarded the Complaint together with a memorandum indicating that it could not represent the District Attorney in this action due to the conflict of interest. Mandel Aff. ¶ 5; Solow Aff. Ex. G. However, the District Attorney took no action on the Complaint until "the brink of the Christmas holiday," Solow Aff. ¶ 8, when Assistant District Attorney Jay Cohen telephoned Mr. Solow to request a further extension of time to permit the District Attorney to move to dismiss. Solow Aff. ¶ 8. When Mr. Solow declined on the ground that he already had decided to seek a default judgment against the District Attorney, the District Attorney wrote to Magistrate Judge Go requesting an extension, Solow Aff. Ex. G, which request plaintiff opposed by letter dated December 30, 1993. Solow Aff. Ex. H. Judge Go had not ruled on the request when the District Attorney filed his motion papers on December 30, 1993.

## FACTS

For purposes of this motion to dismiss, the court will accept as true the following allegations contained in the Complaint. On or about September 24, 1990, Eisenberg—a teacher for the Board—had a brief conversation with Joyce Provenzale, a student suspension hearing officer, while on the premises of the Board at 362 Schermerhorn Street, Brooklyn. Compl. ¶ 10; Mandel Aff. ¶ 7. Following this encounter, Eisenberg was arrested by Board security officers upon a complaint by Ms. Provenzale that he had placed his hand upon her breast. Compl. ¶ 10.

Eisenberg initially was given a Criminal Court mediation summons issued based on a complaint of harassment made by Provenzale. Compl. ¶ 10. He participated in mediation procedures before the Criminal Court of the City of New York in lieu of a formal criminal proceeding. Thereafter, upon the complaint of Ms. Provenzale, the District Attorney commenced a prosecution of the plaintiff charging him with sexual misconduct in the third degree pursuant to N.Y. Penal Law § 130.55 for allegedly placing his hand on Provenzale's breast without her consent. Compl. ¶¶ 12–13. During the course of the District Attorney's investigation of Provenzale's complaint, Provenzale's alleged "eyewitness" made a statement that completely exonerated Eisenberg; the District Attorney was provided with records regarding a similar unfounded complaint previously brought by Provenzale; and the District Attorney obtained no other evidence substantiating Provenzale's allegations. Compl. ¶¶ 13–15. Notwithstanding the complete lack of evidence, the District Attorney commenced and continued the criminal prosecution against Eisenberg. Compl. ¶ 16. Eisenberg accordingly filed a motion to dismiss "in the interest of justice" pursuant to N.Y.Crim.Proc. Law § 170.40, which motion was granted, *see People v. Eisenberg,* Dkt. No. 90K060506,

Decision and Order dated Apr. 8, 1991 (N.Y.Crim.Ct. Kings Co.). Compl. ¶¶ 19–20. Eisenberg subsequently commenced the present action.

As it relates to the District Attorney, the Complaint alleges that while acting under color of state law as a prosecuting agency, the District Attorney violated plaintiff's rights to due process of law and privacy as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Specifically, plaintiff claims that his rights were violated by the District Attorney's acts in: (1) commencing and continuing the baseless prosecution, Compl. ¶ 28; (2) commencing and continuing the baseless prosecution

> pursuant to and in implementation of its stated administrative policy to waive and/or abrogate its duty to exercise prosecutorial discretion and to prosecute sex crime charges and/or other crimes merely upon the decision and/or insistence of a complainant regardless of a total lack of evidence supporting same and/or regardless of evidence otherwise exonerating or exculpating the person so charged.

Compl. ¶¶ 29; see also Compl. ¶ 17; and (3) implementing this policy against Eisenberg with deliberate indifference to his rights and to the rights of others by abrogating his duty not to prosecute the innocent in a purposeful or grossly negligent manner. Compl. ¶ 30. Plaintiff further alleges that the District Attorney has failed to train and/or supervise his Assistant District Attorneys ("ADAs") properly with regard to the constitutional rights of citizens by instructing them in and requiring them to adhere to the policy described above. Compl. ¶ 31. In addition, plaintiff has asserted state law tort claims for intentional infliction of emotional distress and malicious prosecution based on the above-described allegations. Compl. ¶ 34. Eisenberg seeks compensatory and punitive damages, as well as costs and attorneys' fees.

## DISCUSSION

### I. Cross–Motion to Disqualify Counsel

■ Turning first to plaintiff's cross-motion to disqualify the District Attorney from serving as his own counsel, it is readily apparent that the cross-motion is without merit. Plaintiff's argument, in essence, is that because the District Attorney's duties and functions are prescribed by New York statute, the District Attorney "has no power or authority under said prescriptions to represent itself or any other party." See Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Cross Motion ("Pl.'s Mem."). Plaintiff relies on three New York cases for this proposition: *People v. Hellmann*, 124 Misc.2d 582, 476 N.Y.S.2d 1017 (N.Y.Co.Ct.1984); *Davis Constr. Corp. v. County of Suffolk*, 112 Misc.2d 652, 447 N.Y.S.2d 355 (N.Y.Sup.Ct. 1982), aff'd, 95 A.D.2d 819, 464 N.Y.S.2d 519 (2d Dep't 1983); and *Killen v. Property Clerk Div. Police Dep't*, 109 Misc.2d 529, 440 N.Y.S.2d 452 (N.Y.Civ.Ct.1981). Specifically, he focuses on the following language contained in *Hellmann*, 124 Misc.2d at 584, 476 N.Y.S.2d at 1019:

> It should be noted that should the district attorney of any county be sued civilly, it is the county attorney of that county who has the statutory duty to defend the district attorney. Under the law, except for a few specific instances, the district attorney exercises no civil jurisdiction and thus cannot defend himself in a civil suit.

In the first place, *Hellmann* and the other cases upon which plaintiff relies are distinguishable on the basis of their facts.[2] Furthermore, while the language quoted above initially would seem to lend support to plaintiff's argument, reference to the applicable statutes reveals that the argument is erroneous. The powers and duties of the district attorney are set forth in N.Y. County Law § 700 (McKinney 1991 & Supp.1994), which states, in relevant part, that

---

**2.** *Hellmann* involved a motion by the district attorney for appointment of a special prosecutor in the prosecution of a former employee of the district attorney's office; *Davis* in part concerned a motion to disqualify the district attorney as attorney for the county in a civil action; and the *Killen* opinion is of little use because it does not specify the basis for the action against the district attorney or the capacity in which the district attorney was sued.

it shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed.... He or she shall perform such additional and related duties as may be prescribed by law and directed by the board of supervisors.

*See also* N.Y. County Law § 927 (McKinney 1991) (describing duties of district attorneys in New York, Bronx, Kings, Queens and Richmond counties). The County Law also describes the duties of the county attorney (in this case, the Corporation Counsel), which include the prosecution and defense of "all civil actions and proceedings brought by or against the county, the board of supervisors and any officer whose compensation is paid from county funds for any official act...." N.Y. County Law § 501 (McKinney 1991). While these provisions, read together, establish that the county attorney routinely is responsible for the defense of the district attorney, they clearly do not in all cases prohibit the district attorney from defending himself in a civil action. Thus, the fact that in this case the Corporation Counsel is precluded from representing the District Attorney due to a conflict of interest does not necessarily mean that the District Attorney must hire outside counsel, rather than represent himself.

This interpretation of the applicable law is supported by the fact that, as the District Attorney points out, he has represented himself without challenge in numerous actions brought pursuant to § 1983. *E.g., Gan v. City of N.Y.,* 996 F.2d 522 (2d Cir.1993); *Day v. Morgenthau,* 909 F.2d 75 (2d Cir.1990); *Katz v. Morgenthau,* 892 F.2d 20 (2d Cir. 1989). Moreover, the plaintiff does not describe—and the court cannot conceive of—any conflict of interest that might arise as the result of the District Attorney's self-representation in this case. *Cf. Katz v. Morgenthau,* 709 F.Supp. 1219, 1226–27 (S.D.N.Y.), *aff'd in part and rev'd in part,* 892 F.2d 20 (2d Cir.1989) (stating that conflict could arise from Corporation Counsel's representation of both defendant police officers and City of New York if differing theories of liability applied to each defendant).

For all these reasons, plaintiff's cross-motion to disqualify the District Attorney from representing himself is denied.

## II. *Cross–Motion for Entry of a Default Judgment*

Plaintiff argues that entry of a default judgment against the District Attorney is warranted due to the District Attorney's failure to answer or otherwise respond to the Complaint until December 30, 1993, notwithstanding extensions of time granted the District Attorney by plaintiff and Magistrate Judge Go's order that all parties serve and file answers by November 15, 1993. Solow Aff. ¶ 9.

■ As a preliminary matter, the District Attorney correctly points out that plaintiff's cross-motion is technically improper because plaintiff has not sought entry of default prior to moving for a default judgment as required by Fed.R.Civ.P. 55(a) and Local Civil Rule 10(b). *See also Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981) (first step in seeking default judgment is entry of default by clerk upon plaintiff's request). While this technicality alone supports denial of plaintiff's cross-motion, the cross-motion must be denied for the additional reason that plaintiff has not made the showing required for the granting of a default judgment.

■ The Second Circuit has described a default judgment as an "extreme sanction," which "must remain a weapon of last, rather than first, resort." *Meehan,* 652 F.2d at 277. In order to encourage a decision on the merits, disputes in connection with a motion to vacate a default are resolved in favor of the party opposing default. *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 35 (S.D.N.Y.1992). In assessing the merits of a default judgment, courts within the Second Circuit consider the following three factors: (1) the willfulness of the default; (2) whether the adversary would suffer prejudice if the default were set aside; and (3) whether the defaulting party has a meritorious defense.

*John,* 141 F.R.D. at 35; *Katz,* 709 F.Supp. at 1226.[3]

■ Considering first whether plaintiff would be prejudiced if the cross-motion for entry of a default judgment were denied, it is plain that mere delay is insufficient to establish prejudice; rather, it must be shown that the delay will " 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.' " *Bicicletas Windsor, S.A. v. Bicycle Corp. of Am.,* 783 F.Supp. 781, 788 (S.D.N.Y.1992) (*quoting Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983)). Because plaintiff has made no such claim here, he has failed to demonstrate prejudice.

Second, while in order to avoid entry of default, the District Attorney need not conclusively establish the validity of his defense, he at least must establish that he has a potentially meritorious defense. *John,* 141 F.R.D. at 36. As discussed in Part III below, because there are serious questions regarding whether the District Attorney is liable in this case, he has set forth a potentially viable defense, adequate to defeat entry of a default judgment.

Finally, with regard to whether the default was willful, the District Attorney contends that his delay in responding to the Complaint "can, for the most part, be understood as a consequence of his not even being aware that he was being sued." Defendant's Memorandum of Law ("Def.'s Mem. of Law") at 15. The District Attorney has alleged that he did not receive the Complaint until November 12, 1993, when the Corporation Counsel forwarded him a copy. Mandel Aff. ¶ 5; Solow Aff.Ex. G. Plaintiff counters that the Corporation Counsel acknowledged service on behalf of the District Attorney as far back as May 11, 1993. Solow Aff. ¶ 9.

There is some question regarding whether or not the District Attorney was served prop-erly in this case—indeed, the District Attorney has moved to dismiss on the ground of improper service. However, there is no dispute that even after he concededly received a copy of the Complaint on November 12, the District Attorney waited almost six weeks before seeking an extension of time from plaintiff and ultimately filing his motion to dismiss. While the court finds that this delay by the District Attorney may have been avoided, it does not find that such delay was willful. *See John,* 141 F.R.D. at 36 ("While defendant acted imprudently in at first failing to answer, and then in waiting until six weeks after this case was restored to the active docket to file its response, its default was not willful."). In short, because the plaintiff has not made the showing required for entry of a default judgment, his cross-motion is denied.

III. *Immunity of the District Attorney*

In deciding a motion to dismiss under Fed. R.Civ.P. 12(b)(6), a court must take all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The admonition not to dismiss assumes greater weight if—as is the case here—the complaint alleges a violation of civil rights. *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

■ Here, as his first ground for seeking dismissal of the Complaint against him, the District Attorney argues that he is immune from suit; plaintiff disputes that the immunity doctrines apply in this matter.[4]

---

**3.** While this test appears to be employed primarily in assessing whether a default judgment should be set aside pursuant to Fed.R.Civ.P. 55(c), *see Meehan,* 652 F.2d at 277, it also has been used to evaluate whether entry of a default judgment is proper. *See Katz,* 709 F.Supp. at 1226; *see also John,* 141 F.R.D. at 35 (treating defendant's late filing of answer as motion to vacate default under Rule 55(c) ).

**4.** Contrary to plaintiff's averments, *see* Affidavit of Joseph A. Solow in Opposition to Motion and in Support of Cross Motion ("Solow Opp'n Aff.") ¶¶ 2, 5, 9, motions to dismiss on immunity grounds properly and routinely are brought pursuant to Fed.R.Civ.P. 12(b)(6). *See, e.g., Feerick v. Sudolnik,* 816 F.Supp. 879 (S.D.N.Y.), *aff'd,* 2 F.3d 403 (2d Cir.1993); *Gan v. City of N.Y.,* 1992

**A.** *Claims Against the District Attorney in his Official Capacity*

While plaintiff clarifies in his papers in opposition to defendant's motion to dismiss that he did not intend to state claims against the District Attorney in his official capacity, this court agrees with the District Attorney that the Complaint can be read to state such claims.[5] Accordingly, in an abundance of caution, this court will address the applicability of the immunity doctrines to claims against the District Attorney in his official capacity.

■■■■ As the District Attorney argues, the Eleventh Amendment bars federal courts from entertaining suits brought by a private party against a state. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). The Second Circuit recently has observed that

> [t]he immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. *To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.*

*Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir.1993) (*citing Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Hafer v. Melo*, —— U.S. ——, ——, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991)) (emphasis added); *cf. Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988), *cert.*

denied, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."). Accordingly, to the extent that Eisenberg has asserted claims against the District Attorney in his official capacity, the claims against the District Attorney are construed as claims against the state and must be dismissed as barred by the Eleventh Amendment.[6] *Gan*, 996 F.2d at 529, 536.

**B.** *Claims Against the District Attorney In his Individual Capacity*

While the Complaint is somewhat ambiguous with regard to whether plaintiff is suing the District Attorney in his individual capacity, and the plaintiff in fact has cross-moved to amend the Complaint, *inter alia*, to specify that he also is asserting individual capacity claims, the Second Circuit has cautioned that where a complaint does not specify whether claims are asserted against government officials in their individual capacities, it is preferable to construe the complaint as stating both official and individual capacity claims. *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir.) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."), *cert. denied*, —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). On this motion to dismiss, the court therefore will consider wheth-

---

WL 230188 (S.D.N.Y. Aug. 28, 1992), *aff'd in part, rev'd in part*, 996 F.2d 522 (2d Cir.1993).

**5.** In the Complaint, plaintiff describes the District Attorney as follows:

Defendant DISTRICT ATTORNEY OF THE COUNTY OF KINGS is an elected official having responsibility for (a) the prosecution of individuals regarding violations of the general criminal laws and Penal Law of the State of New York and/or the New York City Administrative Code on behalf of the defendants COUNTY OF KINGS and/or THE CITY OF NEW YORK and, (b) the establishment and implementation of policies and practices of his/her office regarding the training, supervision, and conduct of all of his/her employees including his/her Assistant District Attorney's [sic] as to among other things the manner and method in which particular classifications of

cases as well as individual cases are to be investigated, prosecuted, litigated and/or disposed of.
Compl. ¶ 2.

**6.** Furthermore, although § 1983 imposes liability on every "person" who, under color of state law or custom, deprives another of a federal right, neither a state nor a state official sued in his or her official capacity is a "person" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2307–08, 105 L.Ed.2d 45 (1989). "Thus, as to a § 1983 claim for damages against [the District Attorney] in his official capacity as a state official, the complaint failed to state a claim on which relief can be granted." *Gan*, 996 F.2d at 536.

er the District Attorney is entitled to absolute or qualified immunity for claims asserted against him in his individual capacity.

 To the extent that a state official is sued for damages under § 1983 in his or her individual capacity, he or she may be entitled to absolute or qualified immunity— but not to Eleventh Amendment immunity— depending largely upon the nature of the function being performed. *Gan,* 996 F.2d at 530; *Day,* 909 F.2d at 77. Using this functional analysis, the Supreme Court has held that a prosecutor is absolutely immune from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process," such as duties performed in "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *see also Buckley v. Fitzsimmons,* ── U.S. ──, ──, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993) ("We have not retreated ... from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). A prosecutor thus has absolute immunity in connection with the decision whether or not to commence a prosecution, *Gan,* 996 F.2d at 530, and the allegation that a prosecutor engaged in malicious prosecution "is clearly within the 'judicial phase of the criminal process.'" *Day,* 909 F.2d at 77 (*quoting Imbler,* 424 U.S. at 430, 96 S.Ct. at 995). The Second Circuit has described the importance of prosecutorial immunity with regard to the decision to initiate a prosecution as follows:

[I]t is impossible to know whether the claim is well founded until the case has been tried, and ... to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith.

*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); *see also Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987) ("The purpose of the immunity rule is to give to public officials trusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities.").

 In this case, to the extent that plaintiff complains about the District Attorney's decision to commence and persist in the prosecution of plaintiff, notwithstanding the dearth of inculpatory evidence and the existence of exculpatory evidence, the challenged conduct plainly involves acts "intimately associated with the judicial phase of the criminal process," for which the District Attorney is entitled to absolute immunity.[7]

Plaintiff also frames his claim against the District Attorney in terms of the District Attorney's alleged policy of prosecuting certain categories of cases—particularly sex crimes—based on the accusations of a complainant, regardless of a total lack of supporting evidence.[8] Plaintiff insists that this

---

**7.** While in an apparent attempt to avoid the absolute immunity bar, plaintiff contends that he is not challenging the District Attorney's "individual decision per se to prosecute plaintiff and/or the manner ... in which it exercised its discretion to do so," Pl.'s Mem. at 9, the Complaint clearly states such a challenge, *see* Compl. ¶ 28, and plaintiff's efforts to dodge the absolute immunity bar with respect to this claim are unavailing.

**8.** To the extent that plaintiff states claims against the District Attorney in his capacity as municipal policymaker, these claims are against the City, rather than the District Attorney. *See Gan,* 996

F.2d at 536 ("With respect ... to claims centering not on decisions whether or not, and on what charges, to prosecute but rather on the administration of the district attorney's office, the district attorney has been treated not as a state official but rather as an official of the municipality to which he is assigned."); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992) ("Where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker."), *cert. denied,* ── U.S. ──, ──, 113 S.Ct. 1387, 1412, 122 L.Ed.2d 762 (1993). The municipal policymaker claims therefore are not before the court on this motion to dismiss by the District Attorney.

"policy" is "clearly administrative and managerial" in nature, Pl.'s Mem. at 11, and thus is not covered by absolute immunity.

 While plaintiff is correct that a prosecutor does not enjoy absolute immunity for acts that are merely administrative, rather than prosecutorial, in nature, *Schloss v. Bouse*, 876 F.2d 287, 290 (2d Cir.1989), the policy and conduct that plaintiff complains of here are not sufficiently distinct from the decision whether or not to prosecute to defeat the District Attorney's entitlement to absolute immunity. In this regard, reference to a recent decision of the Court of Appeals for the District of Columbia Circuit is instructive and dispositive. In *Haynesworth v. Miller*, 820 F.2d 1245 (D.C.Cir.1987), plaintiff alleged, *inter alia*, that he was victimized by a policy of retaliatory prosecution—"a practice of pursuing criminal charges against individuals who have endured wrongful arrests, solely because they refuse to waive civil suits against the arresting officers." *Id.* at 1248. Defendant Miller, who was the Chief of the Law Enforcement Section of the Corporation Counsel, claimed that he was absolutely immune from liability. *Id.* at 1252. Finding that Miller was entitled to absolute immunity for establishing and implementing the alleged policy, the Court of Appeals held that "[t]he decision to focus prosecutorial energies upon particular classes of law violations or violators clearly bears many features in common with a decision to commence a single proceeding." *Id.* at 1269. The court concluded that this resemblance was sufficient to invoke absolute immunity as envisioned by the Supreme Court in *Imbler* to exempt Miller from personal liability for his formulation of general policies on prosecution. *Id.* In reaching this conclusion, the court further noted that

> [s]ince general prosecutorial policies culminate in the initiation of particular criminal

actions, those policies raise the same spectre of invidious lawsuits as individual decisions to inaugurate single prosecutions. Indeed, the threat to the policymaker may be amplified; he or she, as policymaker, faces the risk of recrimination from the potentially larger number of parties prosecuted in accordance with the agency directive. The threat of litigation is very real, and indubitably would inhibit the performance of prosecutorial duties.

*Id.* at 1269–70.[9] *See also Schloss*, 876 F.2d at 290–91 (prosecutor's demand that plaintiffs execute releases in favor of police and municipalities in exchange for decision not to prosecute was not "sufficiently independent of the decision whether or not to prosecute to warrant characterizing the demand for releases as merely administrative," and prosecutor was absolutely immune).

Similarly, the District Attorney's policy regarding sex-crimes prosecutions alleged by plaintiff in this case is "intimately associated" with the decision about when initiating—or not initiating—a prosecution is appropriate. Plaintiff's mere characterization of the District Attorney's prosecutorial decision-making as "policy" does not remove it from the ambit of absolute immunity. In addition, plaintiff's reliance on *People v. Benoit*, 152 Misc.2d 115, 575 N.Y.S.2d 750 (N.Y.Crim.Ct. 1991) and *People v. Garfield*, 152 Misc.2d 51, 574 N.Y.S.2d 501 (N.Y.Justice Ct.1991), as authority for the proposition that the alleged policy "has been declared unconstitutional by the New York courts as an obvious violation of due process," Pl.'s Mem. at 11, is misplaced. Rather, the state court in *Benoit* held that a New York statute permitting a private citizen to commence a prosecution after the district attorney declined to prosecute was unconstitutional; and the *Garfield* court simply extended the *Benoit* holding to

---

**9.** While the *Haynesworth* court noted that this holding might leave a " 'genuinely wronged defendant without civil redress,' " *id.* at 1270 (*quoting Imbler*, 424 U.S. at 427, 96 S.Ct. at 993), it remarked on the existence of alternative safeguards designed to "check" official misconduct in the formulation of prosecutorial policies:

> Those policies will frequently result in criminal proceedings, and therein the defendants will be accorded the full panoply of trial and appel-

late mechanisms to attack suspect practices. Furthermore, prosecutors are subject to professional discipline, public censure, and perhaps even criminal penalties for unsavory acts; and to the extent that policy decisions have wider impact than conduct in individual prosecutions, they are more likely to produce a backlash.

*Id.* (footnotes omitted).

disqualify the trial complainant from acting as prosecutor. Accordingly, this court concludes that the District Attorney is absolutely immune with regard to plaintiff's allegations concerning the District Attorney's promulgation and implementation of his "policy."[10]

### IV. *Plaintiff's Cross–Motion To Amend the Complaint*

Plaintiff additionally has cross-moved for leave to file an amended complaint. Plaintiff seeks to amend his Complaint in two respects: first, to clarify that he is suing the District Attorney in his individual capacity, as well as his official capacity; and second, to add a claim for declaratory and injunctive relief. The District Attorney opposes the cross-motion in its entirety.

In light of the conclusion reached above that the District Attorney is immune from suit with regard to the claims stated against him in both his official and individual capacities, granting the first portion of plaintiff's application would be futile. With respect to the second portion of the cross-motion, while the District Attorney is not immune from claims for declaratory and injunctive relief, *Gan,* 996 F.2d at 535; *Fields v. Soloff,* 920 F.2d 1114, 1120 (2d Cir.1990) (*quoting Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984)), plaintiff has "alleged no facts upon which this Court can grant injunctive or declarative relief in order to protect plaintiff['s] civil rights." *Gan v. City of N.Y.,* 1992 WL 230188, at *3 (S.D.N.Y. Aug. 28, 1992), *aff'd in part, rev'd in part,* 996 F.2d 522 (2d Cir.1993). Accordingly, the second prong of plaintiff's cross-motion is denied, as well.

### V. *The District Attorney's Motion To Dismiss for Improper Service*

While there appear to be some thorny questions regarding whether or not the District Attorney was served properly, because all of plaintiff's claims have been disposed of on immunity grounds, there is no need to reach those issues at this time.

---

10. Because the court has dismissed all of plaintiff's claims against the District Attorney over which it has original jurisdiction, it declines to

### CONCLUSION

In sum, the District Attorney's motion to dismiss the Complaint on immunity grounds is granted. The plaintiff's cross-motions to disqualify the District Attorney from serving as his own counsel, for entry of a default judgment and to amend the Complaint are denied.

SO ORDERED.

exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).