Mary R. McKEON, Plaintiff,

v.

Michael E. DALEY, Individually, and as District Attorney for the County of Herkimer, State of New York; John Ahern, Individually, and as an employee, agent and servant of the New York State Police; and The County of Herkimer, State of New York, Defendants.

No. 5:98–CV–193.

United States District Court, N.D. New York.

May 24, 2000.

L. John Van Norden, Schenectady, NY, for plaintiff.

Carter, Conboy, Case, Blackmore, Napierski & Maloney, P.C., Albany, NY, for defendant Daley & Herkimer County, Blair W. Todt, of counsel.

Hon. Eliot Spitzer, Attorney General of the State of New York, Department of Law, Albany, NY, for defendant, Ahern.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff, Mary R. McKeon ("plaintiff"), commenced the instant action on February 5, 1998, alleging violations of her constitutional rights pursuant to 42 U.S.C § 1983, the New York State Constitution, and state common law. Defendants Michael E. Daley, Individually, and as District Attorney for the County of Herkimer, State of New York ("Daley" or "District Attorney") and The County of Herkimer, State of New York ("Herkimer County") move to dismiss plaintiff's complaint in its entirety as to each pursuant to Rule 12(b)(6) and/or Rule 56 of the Federal Rules of Civil Procedure. Oral argument was held on February 11, 2000 in Utica, New York. Decision was reserved.

## II. FACTS

The chronology of events, as drawn from the papers submitted by each party, is set forth below. Prior to September 1996, Daley was prosecuting New York State police officer Thomas Rathburn ("Rathburn") for various assault crimes. Concurrently, attorney Jeffrey Rheinhardt ("Rheinhardt") was representing the City of Little Falls, New York, in an Article 75 proceeding against Rathburn. At a meeting between Daley and Rheinhardt in September 1996, Rheinhardt informed Daley that an individual named Mary McMahon had filed a criminal complaint against him in Cambridge, Massachusetts on or around March 18, 1996, alleging an assault (the "Cambridge Complaint"). The Cambridge Complaint was purportedly filed several days after Rathburn had failed a polygraph examination (presumably in the course of Daley's prosecution of him). Rheinhardt, having determined that he was not in Massachusetts on the date in question, asked the District Attorney to inquire further into the false complaint.

Daley also claims that John Speer ("Speer"), a part time Assistant District Attorney, was present at the meeting. Speer stated that in or around January or February 1996, his private client, Mary McKeon, had asked him if he knew someone named Jeffrey Rheinhardt, and further stated that Rheinhardt was "doing something bad" to a friend of hers. Daley was informed that plaintiff had ties to the Boston area, and then learned that the police officers who had taken the complaint recalled the complainant. Daley submits

that he and others (non-experts) subsequently compared a handwriting exemplar of plaintiff Mary McKeon with Mary McMahon's signature on the criminal complaint, and determined they were remarkably similar. Daley contacted the State Police and requested an investigator. Defendant John Ahern ("Ahern") was assigned.

According to plaintiff's complaint, on October 2, 1996, Ahern appeared at plaintiff's residence in the early afternoon and presented her with a subpoena directing her to appear that morning as a witness before a grand jury at the Herkimer County Courthouse. The subpoena was allegedly issued by Daley in his capacity as the District Attorney for the County of Herkimer, New York. Ahern entered plaintiff's residence, and subsequently transported her by automobile to the courthouse. *See* Compl. ¶¶ 10–16. Plaintiff testified at her deposition that Ahern threatened to place handcuffs on her unless she rode with him to the courthouse (plaintiff would have preferred to drive with her daughter, who followed them to the courthouse). *See* Todt Aff.Ex. D at 103, 107–111.

Plaintiff admits in her deposition testimony, however, that she agreed to accompany Ahern to the courthouse after conversing with her attorney on the telephone.[1] *See id.* at 236. Plaintiff further stated that her attorney also spoke with Ahern while they were still at plaintiff's residence, and thereafter advised her to go with Ahern, and that he would meet her at the courthouse. *See id.* at 92–93.

Plaintiff met her attorney at the courthouse and was apparently afforded time for a private conversation in an empty room. *See id.* at 121–130. Plaintiff was then questioned by Daley in his office concerning the Cambridge Complaint. Plaintiff's attorney was present for the duration of the questioning. *See id.* at 131–134. According to plaintiff's complaint, the District Attorney allegedly "demanded that Plaintiff appear before a grand jury and

testify that Rathburn [sic] had counseled, importuned, directed and/or coerced her to file false charges against Rheinhardt in Cambridge, Massachusetts on March 18, 1996, under a grant of immunity." Compl. ¶ 21. Plaintiff denied any involvement with the Cambridge Complaint. She was nevertheless given a subpoena to appear on October 9, 1996, and she agreed to have her photograph taken before leaving the courthouse (according to plaintiff's testimony, her attorney first advised her that she was not required to consent to the photograph). *See* Todt Aff.Ex. D at 141–143.

Ahern has submitted an affidavit with defendants' motion denying that he appeared at plaintiff's home on October 2, 1996. Ahern asserts that he was not in the State of New York on that date due to military service obligations. Rather, defendants claim that Ahern contacted plaintiff at her home on October 7, 1996, served her with a subpoena directing her to appear before a grand jury on October 9, 1996, and requested that she discuss the Rheinhardt matter further with Daley. Defendants state that no subpoena was issued requiring plaintiff to appear on October 7, 1996 (nor for October 2, 1996), but that plaintiff was called only for October 9, 1996, and voluntarily met with Daley on October 7, 1996, after conversations with her attorney. Ahern testified at his deposition that he did not transport plaintiff to the courthouse in his car.

Defendants claim that following the District Attorney's questioning of plaintiff, Ahern traveled to Cambridge, Massachusetts, and interviewed the two police officers who had taken the complaint against Rheinhardt. Each officer selected plaintiff's photograph from a photo array of six other individuals, and identified plaintiff as the person who filed the criminal complaint against Rheinhardt.

There is no dispute that on October 9, 1996, plaintiff appeared before a grand

---

1. At that time, plaintiff was represented by a different attorney than her present counsel.

jury pursuant to a subpoena issued by the District Attorney's office. Plaintiff gave testimony in the presence of Daley, and continued to deny that she was involved in filing false criminal charges against Rheinhardt in Cambridge. Following her testimony, Daley informed a uniformed officer that he had witnessed plaintiff commit the crime of perjury, and that she should be arrested. She was arrested and charged with the crime of perjury before a grand jury based on her testimony that day. Bail was set in the amount of $5,000.00. She remained in the Herkimer County Sheriff's Department for approximately six hours, and was then released on bail. On April 3, 1997, a grand jury returned an indictment against plaintiff, charging her with perjury in the first degree in violation of § 210.15 of the Penal Law of the State of New York.

At a subsequent *Wade* hearing in April 1997, plaintiff was directed to sit in a courtroom among many of her female family members. In this context, the two witnesses from Cambridge, Massachusetts, (the parties dispute whether such witnesses were police or court officers) were unable to positively identify her as the individual who filed the complaint against Rheinhardt. Plaintiff alleges that despite "the failure of the prosecution's proof" defendants subsequently persisted in their prosecution of plaintiff. Compl. ¶ 46. On September 2, 1997, the indictment for perjury against plaintiff was dismissed. Acting Supreme Court Justice Patrick L. Kirk's written decision nevertheless stated that:

> The People have consistently set forth the theory that the victim [Rheinhardt] in this case was set up as a retaliation or as an attempt to intimidate due to the victim's involvement in the prosecution of a defendant in another case who was a former police officer [Rathburn]. From the Court's participation in both matters it agrees with the People's theory, and as such, believes there was harm caused by the act which gave rise to the grand jury investigation...

Todt Aff.Ex. I. Justice Kirk's decision, however, explained that dismissal was necessary because certain facts relied on by the prosecution could not be used at trial. Defendants have also submitted an affidavit from Justice Kirk to this effect.

Based on the above facts, plaintiff's complaint alleges that while acting under color of state law, defendants violated her rights protected under the United States Constitution and 42 U.S.C. § 1983, as enumerated below:

> Plaintiff was wrongfully arrested on October 2, 1996 pursuant to invalid legal process and without legal authority, unlawfully subjected to custodial interrogation, threatened with prosecution, unlawfully photographed, entrapped, forced to testify before a grand jury for the purpose of manufacturing a basis to effect her wrongful arrest, improperly and unlawfully investigated and accused of wrongdoing, forced to waive her privilege against self incrimination, deprived of the benefit of legal counsel, unlawfully arrested on a false and unsubstantiated charge of perjury, wrongfully held in custody, deprived of her freedom and liberty, subjected to search, subject to ridicule, embarrassment and humiliation, maliciously and vindictively prosecuted, maliciously and vindictively prosecuted following the complete failure of the defendant's evidence, forced to incur expense, forced to defend herself against the wrongful charge of perjury, and otherwise injured and damaged, all in violation of the laws of the State of New York and the rights, immunities, and privileges secured unto her by and pursuant to the Fourth, Fifth, Sixth, Eighth, Ninety [sic] and Fourteenth Amendments of the United States Constitution.

Compl. ¶ 63.

## III. DISCUSSION

### A. *Jurisdiction*

This Court has original jurisdiction arising from plaintiff's claim under 42 U.S.C.

§ 1983 and supplemental jurisdiction as to the claims arising under state law.

## B. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Richardson*, 180 F.3d at 436; *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

Defendants argue that plaintiff's complaint should be dismissed based on (1) failure to state a cause of action under 42 U.S.C. § 1983; (2) plaintiff's claims against Daley in his official capacity are barred by the Eleventh Amendment to the United States Constitution; (3) plaintiff's complaint fails to allege an unconstitutional policy or procedure as against Herkimer County; and/or (4) Daley is entitled to absolute or qualified immunity for acts taken in either his official or individual capacity.

## C. Defendant Daley

■ Section 1983 "is not itself a source of substantive rights ..." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Rather, § 1983 provides a civil claim for damages and injunctive relief against any person who acts under color of state law to deprive another of a constitutional right. 42 U.S.C. § 1983. Plaintiff predicates her § 1983 claims against Daley on three events whereby plaintiff was allegedly deprived of her constitutional rights: (1) an illegal custodial interrogation on October 2, 1996; (2) false arrest on charges of perjury following her testimony before a grand jury on October 9, 1996; and (3) malicious prosecution of the perjury charge.

The Court will initially address the extent to which plaintiff's claims may be barred by the immunity doctrines raised by defendants.

### 1. Eleventh Amendment

■ The Eleventh Amendment prohibits federal courts from entertaining suits brought by a private party against a state. *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "While performing prosecutorial acts, district attorneys in New York represent not the county in which they serve but the state." *Tassone v. County of Onondaga*, No. 94–CV–0173, 1996 WL 77429, at *4 (N.D.N.Y. Feb. 15, 1996) (cit-

ing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988)). Accordingly, when a district attorney is sued for damages in his official capacity, the suit is deemed to be a suit against the state, and the district attorney is entitled to invoke the Eleventh Amendment immunity belonging to the state. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993); *Eisenberg v. District Attorney of the County of Kings*, 847 F.Supp. 1029, 1035 (E.D.N.Y.1994). Notably, while § 1983 imposes liability on any "person," neither a state nor a state official sued in his or her official capacity is a "person" within the meaning of § 1983. *Eisenberg*, 847 F.Supp. at 1035 n. 6.

The caption from plaintiff's complaint indicates that she is suing Daley both individually and in his official capacity as District Attorney for the County of Herkimer. Based on the above-referenced law, it is clear that the complaint must be dismissed as to Daley insofar as the claims are directed against him in his official capacity.

Defendants argue that notwithstanding the caption, all of plaintiff's allegations involve conduct within Daley's official capacity, and therefore the entire complaint should be dismissed as against him. The Second Circuit has cautioned against automatically construing a complaint as focusing on one capacity to the exclusion of the other where the plaintiff has not clearly identified one in particular. *See, e.g., Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir.1993). Plaintiff's complaint does not clearly identify to which capacity her claims are addressed. The Court therefore declines to read the complaint as asserting claims against Daley solely in his official capacity, and will next assess whether he qualifies for immunity in his individual capacity.

### 2. *Absolute and Qualified Immunity*

■ A state official sued for damages under § 1983 in his or her individual capacity may be entitled to absolute or qualified immunity. Daley contends he is entitled to absolute immunity from all of plaintiff's allegations arising from or after the grand jury proceeding held on October 9, 1996. This would include plaintiff's claims of false arrest and malicious prosecution.

■ Unlike immunity under the Eleventh Amendment, the availability of absolute prosecutorial immunity depends on the function being performed. A prosecutor asserting absolute immunity has the burden of establishing the existence of immunity for the function in question. *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir.1995). In this "functional approach," a court must examine whether the alleged acts are part of a prosecutor's traditional function and closely associated with the judicial phase of the criminal process. *Smith v. Gribetz*, 958 F.Supp. 145, 150 (S.D.N.Y.1997). Where a prosecutor shows he was performing a function associated with his role as an advocate, he will enjoy absolute immunity for any such conduct—regardless of his motive. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994); *Smith*, 958 F.Supp. at 153 n. 9 ("a prosecutor's motives have no bearing on the applicability of absolute immunity.").

■ Pursuant to the "functional approach," even a wrongful act such as participating in a conspiracy to manufacture evidence, while not properly an aspect of a prosecutor's duty, "is immaterial, because '[t]he immunity attaches to his function, not to the manner in which he performed it.'" *Dory*, 25 F.3d at 83 (quoting *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir.1986)). A potential consequence of absolute immunity is, therefore, that it may "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler v. Pachtman*, 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Nevertheless, the functional approach ensures "the vigorous and fearless performance of the prosecutor's duty that is essential to the proper

functioning of the criminal justice system." *Id.* at 427–28, 96 S.Ct. 984.

█ Based on the principles set forth above, it is well-established in the Second Circuit that claims of malicious prosecution of a particular charge are tied to the judicial phase, and warrant absolute immunity for a defendant district attorney. *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir.1990); *Hill,* 45 F.3d at 661; *Eisenberg,* 847 F.Supp. at 1036; *Smith,* 958 F.Supp. at 152. Here, plaintiff's allegations that she was "maliciously and vindictively prosecuted" arise from Daley's conduct after he had initiated the prosecution against plaintiff for perjury. Plaintiff claims that the prosecution was improper because Daley was merely punishing her for refusing to testify against Rathburn, that he set an unreasonable bail, and that he continued to prosecute her notwithstanding insufficient evidence. As such, her allegations are predicated on acts clearly within the scope of Daley's role as a prosecutor and his motives are irrelevant. Plaintiff's malicious prosecution claims in violation of § 1983 must therefore be dismissed on grounds of absolute immunity.

█ A district attorney acting in his role as advocate for the state may also enjoy absolute immunity for "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Buckley v. Fitzsimmons,* 509 U.S. 259, 272, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quoting *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984). Functions closely tied to the judicial process "include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley,* 509 U.S. at 273, 113 S.Ct. 2606. The shield of immunity is not available, however, where a prosecutor acts in an investigative or administrative capacity not undertaken in preparation for judicial proceedings. *Id.*

█ Relevant case law has established that a prosecutor has absolute immunity from a claim for damages for commencing a prosecution. *Imbler,* 424 U.S. at 431, 96 S.Ct. 984; *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996); *see also Ryan v. City of Watertown,* No. 98–CV–0616, 1998 WL 709798, at *2 (N.D.N.Y. Oct.7, 1998) (district attorney's decision to pursue charges without probable cause is protected "even if wrongful or malicious"). A prosecutor also has immunity in deciding which offenses are to be charged. *Ying Jing Gan,* 996 F.2d at 530; *Smith,* 958 F.Supp. at 152. In *Ying Jing Gan,* the plaintiff asserted a claim against an assistant district attorney for advising the police not to arrest a suspect and declining to institute criminal proceedings against such suspect for the commission of a felony. The Court held that the defendant was entitled to absolute immunity because the challenged conduct "focuses squarely on prosecutorial decisions as to whether or not to institute a prosecution, and if so on what charges." *Ying Jing Gan,* 996 F.2d at 531. In *Barr v. Abrams,* 810 F.2d 358 (2d Cir.1987), the defendant assistant attorneys general and investigators had effected an arrest and imprisonment pursuant to a warrant later found to have been obtained without probable cause. *Id.* at 362. The arrest warrant had been issued on the basis of information filed by one of the assistant attorneys general. The Court found the conduct protected, emphasizing that the plaintiff had not alleged impropriety in the manner of arrest, but rather that the decision to charge and arrest him was malicious and unlawful. *Id.*

█ Absolute immunity may also extend to a prosecutor's agreement to forgo prosecution in exchange for certain concessions by the accused—analogous to the negotiation of plea bargain. *Doe,* 81 F.3d at 1210. In *Schloss v. Bouse,* 876 F.2d 287 (2d Cir.1989), for example, a prosecutor had required the plaintiff to execute releases in favor of certain municipal entities

in order to obtain his agreement not to prosecute. Because "the demand for releases and the threat to prosecute were interdependent," (*Id.* at 291), the decision was considered prosecutorial. In these situations, a court is to examine "the nature of the conduct that was allegedly intertwined with the prosecutorial decision." *Id.* at 291–92. It is only where the prosecutor has acted "without any colorable claim of authority" to impose the condition that his conduct will not be protected. *Id.* (quoting *Barr*, 810 F.2d at 361); *accord Doe*, 81 F.3d at 1211 (prosecutor had no authority to demand religious oath on a bible in a church).

■ In the present case, defendants have asserted absolute immunity with respect to Daley's involvement in the alleged false arrest following plaintiff's testimony before the grand jury on October 9, 1996. Significantly, he was already in possession of information provided to him by his investigators and had called plaintiff as a witness before the grand jury to present evidence. Following her testimony, he instructed an officer to arrest plaintiff for perjury. At that point, Daley had clearly identified plaintiff as a wrongdoer, and thereby was not engaging in an investigative or administrative act. Moreover, the thrust of plaintiff's complaint appears to be the decision to have her arrested, not the manner in which the arrest was effected. Accordingly, under the referenced case law, Daley's discretionary decision to have plaintiff arrested and charged with perjury following her testimony fell under the rubric of the traditional prosecutorial functions of evaluating evidence, initiating a prosecution, and deciding the offense charged. In addition, insofar as plaintiff alleges that the perjury arrest was due to Daley's carrying out his threat of prosecution because she refused to testify against Rathburn, it is clear that the decision to arrest was intertwined with his prosecutorial functions of questioning witnesses and presenting evidence to the grand jury.

Plaintiff appears to find it significant that no police officers were in the room when she testified, concluding they could not have formed probable cause to arrest her absent Daley's directive. This fact, even if true, does not itself transform the District Attorney into a "complaining witness" like the defendant prosecutor considered in *Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997), as urged by plaintiff. In the *Kalina* case, the Supreme Court held that a prosecutor was not entitled to immunity where she executed a sworn certification for the determination of probable cause containing false statements of fact, upon which an arrest was based. The Supreme Court explicitly acknowledged that the prosecutor's application for an arrest warrant (including two other documents) was otherwise protected by the doctrine of absolute immunity. *Id.* at 129, 118 S.Ct. 502. The Court distinguished those aspects of the application involving the exercise of professional judgment, such as the determination as to whether probable cause existed, the decision to file charges, and even the selection of facts comprising the evidentiary support. Rather, the prosecutor only acted as a complaining witness when she attested to the truth of the averments contained in the certification "[u]nder penalty of perjury." *Id.* at 129–31, 118 S.Ct. 502. Here, plaintiff complains of Daley's decision to arrest her, not that he testified under oath as to false facts.[2]

In sum, Daley's decision to have plaintiff arrested and charged with perjury, regardless of his motive, was not a decision "foreign to the prosecutor's office" (*Schloss*, 876 F.2d at 292), and should receive the protection of absolute immunity.

---

**2.** While plaintiff argues in her memorandum of law that Daley testified before a Grand Jury against plaintiff at a later point in time, the Court declines to conflate these events. Whatever ethical implications may arise from such conduct is extraneous to the question of whether his decision to have plaintiff arrested on October 9, 1996, was a function of his role as a prosecutor.

In any event, even if Daley's instruction to Ahern to arrest plaintiff could be characterized in terms of a police function, rather than prosecutorial, the doctrine of qualified immunity would still preclude a trial. Qualified immunity is available to protect conduct violating a clearly established constitutional right where the governmental official had an objectively reasonable and good faith belief that the action taken was lawful. *See Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir.1998); *Ying Jing Gan*, 996 F.2d at 532. Therefore, even assuming that an arrest without probable cause was effected, "an arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987). Here the court which eventually dismissed the ensuing grand jury indictment of plaintiff nevertheless commented on the strong circumstantial evidence supporting plaintiff's involvement in the retaliatory efforts against Rheinhardt. This indicates, at the very least, that reasonable officers could have disagreed whether the probable cause test was met with respect to plaintiff's arrest for perjury. Therefore, Daley is entitled to summary judgment on the basis of qualified immunity even if we assume absolute immunity is unwarranted.

### 3. *Custodial Interrogation*

Plaintiff's one remaining claim against Daley pursuant to § 1983 is founded on the allegedly "illegal custodial interrogation" of October 2, 1996, prior to the grand jury proceeding on October 9, 1996. De-

fendants have not argued that the District Attorney's conduct therein should receive absolute immunity, but instead urge dismissal on grounds that either a claim has not been stated under § 1983, or pursuant to the doctrine of qualified immunity.

As earlier noted, in order to bring a cause of action under § 1983, a plaintiff must establish that he or she has been denied a constitutional or federal statutory right. It will therefore be initially determined whether plaintiff has sufficiently pleaded a viable claim that her constitutional rights were violated by conduct attributable to Daley in his individual capacity (as previously discussed, all allegations against him in his official capacity are barred under the Eleventh Amendment).[3]

Excluding the conduct for which Daley has absolute immunity, plaintiff's complaint contains allegations that Daley issued a subpoena, served by Ahern at 1:30 p.m. on October 2, 1996, directing her to appear before a grand jury that morning.[4] Plaintiff alleges that Ahern entered her residence and then transported her to the courthouse (upon information and belief pursuant to instruction by Daley). Plaintiff was then questioned by the District Attorney in an empty room regarding the Cambridge Complaint. Plaintiff denied knowledge or involvement, but was purportedly threatened with prosecution if she refused to testify before a grand jury against Rathburn on October 9, 1996. She was released after her photograph was taken. Plaintiff concludes from these facts that she was "wrongfully arrested on October 2, 1996, pursuant to invalid legal process and without legal authority, unlawfully subjected to custodial interrogation, threatened with prosecution, [and] unlawfully photographed...."

Plaintiff, however, admits in her deposition testimony that she agreed to accompany Ahern after conversing with her attor-

---

3. This inquiry is also fundamental to Daley's assertion of qualified immunity. *See Smith*, 147 F.3d at 94.

4. Because the subpoena was allegedly served after the time it commanded the presence of the plaintiff before the grand jury, it will be referred to as an "expired subpoena."

ney on the telephone (even though she immediately noticed that the subpoena was "expired"). She further stated that her attorney spoke with Ahern on the telephone, and thereafter advised her to go with Ahern to the courthouse. Plaintiff concedes that she subsequently met her attorney at the courthouse and initially discussed the matter with him privately. She also concedes that the attorney was present in Daley's office during the questioning. She agreed to have her photograph taken before leaving the courthouse after her attorney advised her that she could decline if she wanted.[5]

Plaintiff's complaint does not clearly identify the particular constitutional right purportedly violated by the described events. The memorandum of law opposing defendants' motion, however, argues that "[i]f Plaintiff was involuntarily taken to Daley's office for questioning as she alleges, such custodial interrogation violated Plaintiff's Fourth Amendment rights."

 The Fourth Amendment to the Constitution of the United States, applicable to the states by virtue of the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The police can be said to have "seized" an individual "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). This determination involves an objective assessment of the overall coercive effect of the police conduct. *United States v. Lee,* 916 F.2d 814, 819 (2d Cir.1990) (citing *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). "Factors which might suggest a seizure

therefore include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room." *Lee,* 916 F.2d at 819 (citations omitted).

Plaintiff's argument meets two of the listed factors, relying on Ahern's allegedly threatening language at her residence, and his demand that she accompany him to the courthouse. The principal legal authority offered for plaintiff's contention that her rights under the Fourth Amendment were violated is *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), a case in which the police, without a warrant, had taken a suspect from his home to the station under threat of arrest and there had him fingerprinted. The suspect was later convicted for burglary and rape. The Supreme Court reversed the state court's conviction, as the fingerprints should have been found inadmissible based on the conduct of the police. The Court found the Fourth and Fourteenth Amendments triggered when:

> [T]he police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.

*Id.* at 1647.

*Hayes v. Florida* is not controlling in the case at bar. A critical distinction is

---

5. As earlier noted, Daley disputes plaintiff's version of the facts—particularly that a subpoena was issued for October 2, 1996, or any date earlier than October 9, 1996. No subpoena other than that reflecting the October 9, 1996, date has been produced. Plaintiff

claims the earlier subpoena was taken from her at the courthouse, and defendants deny it ever existed. Nevertheless, the facts as pleaded by plaintiff for purposes of this analysis are accepted.

that the challenged conduct in *Hayes v. Florida* was performed by a single person or entity—the police. Here, aside from plaintiff's conclusory allegation based upon information and belief that Daley instructed Ahern to take plaintiff to the courthouse, only the ensuing "interrogation" is based upon the conduct of Daley.

▆▆▆▆ It is well-settled in the Second Circuit that to establish liability against a defendant under § 1983, a plaintiff must demonstrate that the defendant was personally involved in the alleged constitutional deprivation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). In order to find Daley liable for "seizing" plaintiff from her residence on October 2, 1997, and transporting her to the courthouse, his involvement would have to be demonstrated in one of four ways: (1) direct participation in the infraction; (2) failure to remedy a wrong after learning of the violation; (3) creating or allowing a policy to continue under which the violation occurred; or (4) gross negligence in supervision of the subordinates who caused the violation. *See Ortiz v. City of New York*, No. 97 Civ. 1596(DAB), 1998 WL 78288, at *2 (S.D.N.Y. Feb.24, 1998).

Clearly, the District Attorney did not directly participate in the conduct at plaintiff's residence. Nor does plaintiff allege that once at the courthouse, she informed him that Ahern had threatened to place her in handcuffs. There is no indication of any policy regarding Ahern's alleged conduct, nor do the facts as pleaded indicate that Daley was negligent in his supervision of Ahern. Accordingly, there appears to be no basis for imposing liability on Daley for acts allegedly performed by Ahern. Returning to the other factors which may demonstrate a "seizure" within the meaning of the Fourth Amendment, none are satisfied by Daley's conduct when viewed independently from that of Ahern. Plaintiff does not allege the threatening pres-

ence of several officers while she was questioned by Daley. Neither does she indicate that any particular weapon was displayed, conduct including physical touching, nor the retention of personal effects.

The only potentially coercive conduct attributed to Daley in this interaction would be his alleged issuance of an "expired subpoena" and subsequent questioning of plaintiff at the courthouse where no grand jury was convened. Plaintiff refers to *People v. Boulet*, 88 Misc.2d 353, 388 N.Y.S.2d 250 (City Court of Rochester, 1976) for the proposition that a District Attorney lacks authority to subpoena witnesses to his office where a Grand Jury is not sitting or where a court is not convened. Apart from factual discrepancies, neither this case nor the other two cited by plaintiff, *Durbin v. United States*, 221 F.2d 520 (App.Div.D.C.1954) and *United States v. Standard Oil Co.*, 316 F.2d 884 (7th Cir.1963), however, state that a witness' rights under the Fourth Amendment are violated when questioned following the issuance of an apparently expired subpoena; much less that such an incident establishes a cause of action for damages pursuant to § 1983.[6]

Moreover, consideration of the facts set forth in plaintiff's own deposition testimony precludes a finding that her constitutional rights were violated. First, the subpoena was expired on its face, a fact that was noticed by plaintiff upon receipt and should have been observed by Ahern as well. If Daley had intended to compel plaintiff into appearing at his office that day through an act of subterfuge, this would seem a somewhat nonsensical choice. Second, any compulsory aspects of the "expired subpoena" would necessarily be diminished by plaintiff's consultation with an attorney before she complied with Ahern's request to accompany him to the courthouse—particularly since she claims to have immediately noticed the "expira-

---

**6.** Plaintiff does not claim that any statement she made on October 2, 1996, was ever used against her. In fact, on both occasions that she was questioned by Daley, she never admitted any involvement with Rathburn with respect to the Cambridge Complaint.

tion" of the subpoena. Moreover, plaintiff admits to a private conference with her attorney at the courthouse before being questioned by the District Attorney, and further acknowledged that her attorney was present throughout the questioning session. In light of the fact that neither plaintiff nor her attorney appear to have objected to Daley's questioning of plaintiff despite ample opportunity, the obvious absence of an assembled grand jury, and full knowledge of the alleged invalidity of the subpoena, and because no other oppressive forces are alleged to have prevented plaintiff from terminating the session, plaintiff has failed to meet the standard necessary to defeat his motion to dismiss.

Because plaintiff has failed to adequately plead a violation of plaintiff's constitutional rights by Daley in his individual capacity or raise a genuine issue of material fact on the claims of a "seizure" and an "illegal custodial interrogation" pursuant to § 1983, summary judgment must be granted in his favor.

### D. *Defendant Herkimer County*

 A municipality may not be held liable in an action under § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of respondeat superior. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983); *see also Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir.1991). Accordingly, a § 1983 plaintiff "cannot sustain a claim against a municipality absent proof of a municipal policy." *Tassone*, 1996 WL 77429, at *4.

The Second Circuit has found that the mere assertion of a municipal policy or custom is inadequate to show the existence of such a policy. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). In order to survive summary judgment, the plaintiffs must introduce affirmative, factual evidence to support allegations of an unconstitutional municipal custom or policy. *See San Filippo v. United States Trust Co.*, 737 F.2d 246, 256 (2d Cir.1984).

 It is true that in this Circuit, a district attorney may be deemed to have acted as a county policymaker when he acts as the manager of the district attorney's office. *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir.1992). Nevertheless, it remains settled that a county cannot be held responsible for misconduct in prosecuting an individual. *Ryan*, 1998 WL 709798, at *5. Accordingly a single incident alleged in a complaint does not establish a municipal policy. *Id.* at *6 (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir.1998)). "The County retains no supervisory authority or power over the district attorney's decisions and/or 'policies' as to whom he chooses to prosecute." *Id.* at *7 (citing cases). It is only where the claims center on the administration of the district attorney's office that a district attorney may be found to have acted as county policymaker. *Ying Jing Gan*, 996 F.2d at 536.

 Plaintiff's complaint does not identify any particular law enforcement policy. Rather, in the action alleged against Herkimer County, plaintiff's complaint merely reiterates summarily the conduct attributed to Ahern or the District Attorney regarding her perjury arrest, indictment, and prosecution. These allegations relate to a single incident and fail to raise any inference of an administrative or managerial policy. Nor has plaintiff come forward with additional evidence tending to show that the challenged actions somehow relate to a custom or policy of Herkimer County. Summary judgment must be granted dismissing the complaint as against Herkimer County.

## IV. CONCLUSION

The plaintiff has failed to make a viable claim against Daley under § 1983 regarding the alleged "seizure" and "illegal custodial interrogation" of October 2, 1996. Daley is otherwise entitled to absolute and/or qualified immunity. Therefore, all § 1983 claims against Daley must be dismissed. In addition, because plaintiff has failed to raise a genuine issue of material fact as to whether the prosecution of plaintiff for perjury arose from a municipal policy, plaintiff's claims against Herkimer County must also be dismissed. Supplemental jurisdiction is declined and the state law claims will also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Accordingly, it is

ORDERED that Michael E. Daley, Individually, and as District Attorney for the County of Herkimer, and the County of Herkimer's motion for summary judgment is GRANTED and the complaint is dismissed in its entirety as against said defendants.

IT IS SO ORDERED.