Sheila Elaine NEVILLE, Plaintiff,

v.

**CLASSIC GARDENS, et al., Defendants.**

No. 400CV190.

United States District Court,
S.D. Georgia,
Savannah Division.

Jan. 17, 2001.

Savage, Herndon & Pinson, PC, John Charles Watts, Jr., Watts & Watts, Savannah, GA, for Plaintiff.

David R. Smith, Beverly G. O'Hearn, Brannen, Searcy & Smith, R. Clay Ratterree, Ellis, Pinter, Ratterree & Bart, LLP, Walter W. Ballew, III, Walter W. Ballew, III, Barrow &Ballew, PC, Malcolm Mackenzie, III; Weiner, Shearouse, Weitz, Greenberg & Shawe, Joseph P. Brennan, Edward L. Newberry, JR., Brennan & Wasden, Savannah, GA, Carroll G. Jester, Jr., Mozley, Finlayson & Loggins, LLP, Atlanta, GA, Howard M. Lessinger, McLain & Merritt, P.C., Atlanta, GA, Albert J. DeCusati, Lucian Gillis, Jr., McLain & Merritt, PC, Atlanta, GA, Richard A. Rominger, Kristine Booker Shehane, Brennan, Harris & Rominger, Steven E. Scheer, Edward M. Hughes, Callaway, Braun, Riddle & Hughes, PC, Savannah, GA, Eric A. Brewton, Shivers & Associates, Alpharetta, GA, Emily E. Garrard, Chatham County Attorney's Office, R. Jonathan Hart, Lee, Black, Hart & Rouse, PC, Savannah, GA, John C. Jones, Asst. Atty. General, Atlanta, GA, Robert E. Falligant, Jr., Savannah, GA, W. Paschal Bignault, Bignault & Carter, Michael G. Hostilo, Zettler & Hostilo, Christian J. Steinmetz, III, Clark & Clark, Michael L. Edwards, Quillian, Loncon, LLP, Savannah, GA, for Defendants.

Michael George Hostilo, Savannah, GA, Pro se.

## ORDER

EDENFIELD, District Judge.

## I. INTRODUCTION

This case recounts the nightmare that can occur when a criminal steals another's identity and causes the identity-theft *victim* to be repeatedly arrested and incarcerated. Plaintiff Sheila Elaine Neville brings this wrongful arrest/incarceration action against that criminal, doc. # 73, who is now under F.R.Civ.P. 55(a) default. Doc. # 89.

Neville also contends that Savannah, Georgia area merchants negligently caused her to be re-arrested. *Id.* She further

seeks redress from defense counsel who, through alleged ineffectiveness, contributed to her travails. Doc. # 73 ¶¶ 96–120. Chatham County, she maintains, denied her "certain protected rights" by failing to furnish her with competent counsel. *Id.* ¶¶ 121–22. And the County's prosecutor, she asserts, violated her rights by delaying her release in bad faith. *Id.* ¶¶ 73–95.

Claiming, *inter alia*, absolute immunity, prosecutor/defendant Melanie Higgins moves under F.R.Civ.P. 12(b)(6) to dismiss plaintiff's Complaint against her. Doc. # 4. Since Neville also brings this action against Higgins in her official capacity, she by definition is suing Chatham County, Georgia. *See Owens v. Fulton County,* 877 F.2d 947, 951 (11th Cir.1989) (for liability purposes, suit against public official in his or her official capacity is considered suit against local government entity he or she represents); 17 Moore's Fed.Prac. § 123.40[2] (3rd ed.2000).

Chatham County, then, also moves to dismiss all claims against it, contending that Higgins and its district attorney's office acted on behalf of the State so it (a) is not a "person" within the meaning of 42 U.S.C. § 1983; (b) therefore is entitled to Eleventh Amendment immunity; and in any event (c) enjoys sovereign immunity against Neville's State law claims. Doc. # 4; *see also* doc. # 22.

## II. BACKGROUND

Lucille Butler stole Sheila Elaine Neville's identity and used it to write bad checks. Doc. # 73 ¶¶ 21–71.[1] "Stiffed" merchants sought Neville's arrest for the bad checks. *Id.* If those merchants had taken reasonable steps, Neville contends, they would have determined that there was no probable cause to arrest her. *Id.*

So, she has sued them for, *inter alia*, false arrest and wrongful incarceration. *See, e.g., id.* ¶¶ 57–58. Prosecutor Higgins, plaintiff alleges, failed to timely dismiss the charges, then timely communicate the dismissal to Neville's jailers. *Id.* ¶¶ 76–79. The District Attorney's office dismissed some warrants on 3/19/99, for example, but then failed to communicate that fact to Neville's jailers until 5/18/99. *Id.* ¶¶ 80–81.

In fact, from 10/7/97–3/13/99, "the District Attorney's office did not take any steps to prosecute [plaintiff] for the warrants issued by [a local municipality]. Instead, the District Attorney's office dragged along the investigation of the claims against [her]." *Id.* ¶ 82. From [1/8/99] until [5/18/99], the [County] Sheriff's Department wrongfully held [Neville] and failed to take steps to release her from incarceration. *Id.* ¶ 83.

Higgins, Neville claims, had primary responsibility for the cases against her. *Id.* ¶¶ 77, 85. By failing to communicate the truth (that Neville was being victimized by Butler's theft of her identity), especially to Neville's attorneys, Higgins caused needless further arrests and incarcerations. *Id.* ¶ 87–93. On top of all that, plaintiff's defense counsel mishandled her case, also

---

1. On a Rule 12(b)(6) challenge, this Court applies the dismissal standards set forth in *Davis v. Monroe County Bd. of Ed.,* 120 F.3d 1390, 1393 (11th Cir.1997) (en banc), *rev'd on other grounds,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), and *White v. Lemacks,* 183 F.3d 1253, 1255 (11th Cir.1999). It "must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor." 2 Moore's Fed Prac. § 12.34[1][b] (3rd ed.2000) (footnote omitted). As is further discussed in Part III(C) *infra,* Neville, by citing to record evidence beyond the Complaint, implicitly urges disposition under F.R.Civ.P. 56. In light of the result reached below, however, the Court will dispose of this matter under Rule 12(b)(6) and thus consider only the Complaint's allegations and Rule 12(b)(6)-authorized matters of record.

causing needless jail time. *Id.* ¶¶ 96–121. She blames Chatham County for knowingly appointing demonstrably incompetent counsel to represent her. *Id.* ¶ 121–22.

All the defendants, plaintiff concludes, "are jointly and separately liable" for the damages she suffered. *Id.* ¶¶ 123. And some, she contends, also are liable for punitive damages. *Id.* ¶¶ 124–126.

## III. *ANALYSIS*

### A. Malicious Prosecution

Suppose a prosecutor, with knowledge that the police have arrested and detained the wrong person for a crime, does nothing for months, even though a simple notice to jailers would have freed the arrestee? Does absolute prosecutorial immunity, as illuminated by *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), apply? How might the arrestee otherwise recover? *Cf. Brady v. Dill*, 24 F.Supp.2d 129, 134–35 (D.Mass.1998) ("*Brady I*") (fact issue existed as to whether State troopers knew that the arrestee was not the person named in an arrest warrant, thus precluding summary judgment in their favor in arrestee's § 1983 damages action for his pretrial detention based on claim that the troopers knew he was not the person wanted by the warrant, yet persisted in detaining him).

Correspondingly, what defenses would then exist? *Cf. Brady v. Dill*, 187 F.3d 104, 115–17 (1st Cir.1999) (reversing *Brady I*, holding, *inter alia*, that State troopers were qualifiedly immune from arrestee's claim that they violated his right against unreasonable seizure and his due process rights by detaining him despite coming to believe his protestations of innocence after having arrested him on facially valid warrant; troopers were objectively reasonable in relying on warrant and in failing to release arrestee once they began to believe he was innocent, and only one

case of suspect precedential value seemed to support assertion of post-arrest right to be released by law enforcement officials who have come to believe arrestee is innocent).

### B. Abandonment Issue

A more preliminary issue emerges, however: whether Neville is even advancing a § 1983 claim. Her initial Complaint made no mention of § 1983, doc. # 1 exh. 1, but she raised it in her 6/30/00 amendment. *Id.* exh. 3. Yet, she referenced only her *initial* Complaint in her latest Amended Complaint. *See* doc. # 73 ¶ 1 ("The Plaintiff incorporates in its entirety along with attachments her complaint filed on April 21, 2000, in the above-styled matter").

One would think that Neville would expressly incorporate her 6/30/00 ("§ 1983") amendment if she wished to preserve her § 1983 claim. For that matter, she conspicuously avoids mention of *any* constitutional rights deprivations in her latest amendment, but instead references only "certain protected rights." Doc. # 73 ¶¶ 121–22.

This suggests claim abandonment. *Cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994) (a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"), quoted in *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000). Nevertheless, the parties' briefs treat the § 1983 claim as extant; therefore, so will the Court.

### C. Rule 12/56 Considerations

Plaintiff's brief reads as if the Court transformed the initial Rule 12(b)(6) motion to one sounding under F.R.Civ.P. 56.

*See* doc. # 15 (plaintiff's brief citing to matters outside the Complaint); # 22 (defendants' brief acknowledging, and not objecting to, same); # 29 (plaintiff's supplemental brief continuing to cite to extra-Complaint evidence). This beckons the Court to dispose of this matter under Rule 56, especially since the parties have had constructive notice. *See* 11 MOORE'S FED. PRAC. § 56.30[4] (3rd ed 2000); *Bordeaux v. Lynch,* 958 F.Supp. 77, 82 (N.D.N.Y. 1997).

The Court nevertheless elects to reach this matter under Rule 12(b)(6) (no one has formally moved for Rule 56 conversion) because under it Neville is given the greater benefit of the doubt (i.e., the Court assumes arguendo that Higgins delayed plaintiff's release in bad faith).[2]

## D. Immunity Defenses

### 1. Absolute and Qualified Immunity

■■■ Higgins assumes arguendo that Neville states a § 1983 claim over Higgins' actions/inactions, *see* doc. # 4 at 3–24, then raises various immunity defenses. Those include qualified and absolute immunity:

> Qualified immunity is the defense ordinarily available to public officials who are sued under 42 U.S.C. § 1983. Absolute immunity, by contrast, is reserved for the special functions of certain officials that resemble functions that would have been immune at common law when § 1983 was enacted. In determining whether a particular act fits within the common-law tradition of absolute immunity, the Supreme Court takes a "func-

tional approach," examining the nature of the function performed, not the identity of the actor who performed it.

*Guzman–Rivera v. Rivera–Cruz,* 55 F.3d 26, 29 (1st Cir.1995) (quotes and cites omitted); *see also Bolin v. Story,* 225 F.3d 1234, 1242 (11th Cir.2000).

> Under the functional approach, it is immaterial that ... defendan[t Higgins was a] prosecutor[ ] *ex officio.* Absolute immunity protects the prosecutor's role as advocate for the State, and not his or her role as an administrator or investigative officer.

*Id.* (quotes and cites omitted); *Zahrey v. Coffey,* 221 F.3d 342, 346 (2nd Cir.2000) (only qualified immunity protects a prosecutor's investigative, as opposed to prosecutorial acts).

■■■ Under the "functional approach" to absolute prosecutorial immunity, even a wrongful act of a prosecutor—such as participating in a conspiracy to manufacture evidence—while not properly an aspect of a prosecutor's duty, is immaterial. *McKeon v. Daley,* 101 F.Supp.2d 79, 87 (N.D.N.Y.2000). In other words, "the immunity attaches to [the prosecutor's] function, not to the manner in which [s]he performed it. Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." *Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2nd Cir.2001) (quotes and cites omitted).

### 2. Eleventh Amendment Immunity

■■ The Eleventh Amendment protects States from § 1983 money damage claims

---

**2.** Incidentally, Neville's *briefs* raise a malicious intent accusation against Higgins. There plaintiff avers that Higgins had no intention of prosecuting Neville on the charges but instead held her in the hope that some other chargeable crime would surface. *See* doc. # 15 at 4; # 15 exh. B at 175–76; *see also* doc. # 29 at 3 ("Instead, Ms. Higgins decided to conduct an investigation as to

whether there were any different charges she might come up with to hold [p]laintiff on"). The only record cite Neville provides for this accusation, however, fails to support it. If anything, the testimony on which plaintiff relies strongly suggests that Higgins was simply negligent—if not outright sloppy—in keeping track of Neville's cases and status. *See* doc. # 15 exh. B at 173–77.

in this context. *Harbert Intern., Inc. v. James,* 157 F.3d 1271, 1277–79 (11th Cir. 1998). That amendment only applies if Higgins acted on behalf of the State rather than Chatham County. *Owens,* 877 F.2d at 952; *see also McMillian v. Johnson,* 88 F.3d 1554, 1568 (11th Cir.1996) ("[i]f the official's actions do not fall within an area of the local government's business, then the official's actions are not acts of the local government"), *aff'd,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

Hence, if she acted on behalf of the State, then she (actually the County, since she is sued in her official capacity) can invoke Georgia's Eleventh Amendment immunity from § 1983 claims. *Abiff v. Slaton,* 806 F.Supp. 993, 996–97 (N.D.Ga.1992) (holding that county prosecutors enjoyed official capacity, Eleventh Amendment immunity from § 1983 claim without examining conduct for which they faced suit), *aff'd,* 3 F.3d 443 (11th Cir.1993).

■ Higgins clearly exercised prosecutorial functions when she delayed in deciding to drop charges, and further delayed in transmitting that decision to Neville's jailers. *Anderson v. Simon,* 217 F.3d 472, 475–76 (7th Cir.2000) (prosecutor's refusal to charge arrestee while awaiting further evidence was prosecutorial decision), *cert. denied,* —— U.S. ——, 121 S.Ct. 765, 148 L.Ed.2d 666 (2001); *cf. Long v. Satz,* 181 F.3d 1275, 1278–80 (11th Cir.1999) (prosecutors who learned of exculpatory evidence but failed to turn it over to defense, prolonging wrongfully convicted plaintiff's incarceration, were performing "prosecutorial functions").

Deciding whether, when and how to go about dropping charges against someone is a prosecutorial function. Engaging in a prosecutorial function is the act of a *State,* not a county, official. *Owens,* 877 F.2d at 952. Thus, "to the degree that [Neville] seeks to hold [Higgins] liable in [her] offi-

cial capacit[y] for acts within the realm of [her] prosecutorial discretion, [she is] considered [a][S]tate official[ ]cloaked in Eleventh Amendment Immunity." *McClendon v. May,* 37 F.Supp.2d 1371, 1375–76 (S.D.Ga.1999), *aff'd,* 212 F.3d 599 (11th Cir.2000); *accord Cook v. Ellison,* 178 F.3d 1299, 1999 WL 311206 at * 2 (9th Cir.1999) (unpublished).

Accordingly, Neville's claims against Higgins in her official capacity, and thus, the County, face dismissal. *See Pitts v. County of Kern,* 17 Cal.4th 340, 70 Cal. Rptr.2d 823, 949 P.2d 920, 923 (1998) (County was not liable under § 1983 for district attorney's alleged misconduct in the prosecution of sex offense charges that were ultimately dismissed; district attorney acted on behalf of State in prosecuting charges and not as a policymaker for county).

■ That, in turn, sinks any official-capacity based State law claims: "The Eleventh Amendment bars federal courts from hearing pendant [S]tate [law] claims for damages brought against State officers who are sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)." *Cook,* 1999 WL 311206 at *2.

### 3. Individual Capacity Claims

The above rulings go to claims against Higgins in her *official* capacity (thus, claims against the County). But Neville also advances money-based § 1983 claims against Higgins in her individual capacity. Normally—at least when considering Higgins's qualified immunity defense—the Court would first determine whether plaintiff has alleged the deprivation of a constitutional right at all. *See Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

But Higgins doesn't raise that point here; instead she again assumes that Neville states a constitutional claim, then focuses on barring it with absolute and qualified immunity. *See* doc. # 4 at 8–14; # 22. Prosecutors, she contends, can exercise their *prosecutorial* powers in bad faith yet still be immune from § 1983 liability. *See* doc. # 4 at 9. As the County points out, Higgins "may have performed less than admirabl[y]," *id.*, doc. # 5 at 9, but that does not strip her of absolute immunity. *Id.*

█ Defendants are correct. Even if Higgins *intentionally* acted in bad faith, she is still absolutely immune because she was still performing prosecutorial duties. *See Guzman–Rivera*, 55 F.3d at 31 (In civil rights action brought by arrestee wrongfully convicted and imprisoned for murder he did not commit, officials were absolutely immune for their postinvestigation failure to move for arrestee's release, as such decision lay at the heart of their prosecutorial function; "Even if it were shown that [prosecutors] reviewed the evidence, found Guzman innocent, and *did nothing*, their decision withal not to dismiss his criminal case lies at the heart of the prosecutorial function") (emphasis added).

Neville points this Court to no distinguishing precedent.[3] Indeed, post *Guzman–Rivera* case law reinforces Higgins's position. *See Altman v. Kelly*, 28 F.Supp.2d 50, 53 (D.Mass.1998) (individual assistant district attorneys were absolutely immune from liability under § 1983 for their failure to dismiss disorderly charge against arrestee, whatever their alleged

motives may have been; prosecutors' decision whether or not to dismiss charge was at the heart of the *prosecutorial function*, and allowing arrestee to sue prosecutors who were carrying out prosecutorial function would inhibit full and free exercise of governmental power to prosecute crime); *Anderson*, 217 F.3d at 475–76 (prosecutor's refusal to charge arrestee while awaiting further evidence was prosecutorial decision, and, therefore, prosecutor is entitled to absolute immunity), both cases cited in Ann., *When is prosecutor entitled to absolute immunity from civil suit for damages under 42 U.S.C.A. sec. 1983: post-Imbler cases*, 67 A.L.R. Fed. 640 § 3 (1984).

Indeed, even if a prosecutor cynically extracts a release against her municipality in exchange for dropping criminal charges, she is absolutely immune. *McKeon*, 101 F.Supp.2d at 87–88. This does not mean that prosecutors can run wild; courts have drawn the line in prosecutorial abuse cases. But, as described *infra*, that line sits primarily in the *pre-arrest* phase of a criminal case. After an arrest, absolute immunity typically is stretched far into the case and even into its afterlife. *See, e.g., Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir.1987) (extending absolute immunity to prosecutors' alleged malicious letter to Parole Commission).

█ Absolute immunity gets downgraded to qualified immunity where a plaintiff traces her constitutional rights deprivation to a prosecutor's *pre*-arrest phase (i.e., investigative/preparatory work) in a case. There courts reason that a

---

3. Note that while detained, Neville could have invoked habeas corpus relief. Indeed, this Court has entertained a habeas petition from the Chatham County Jail. *See Perry v. Mitchell*, 253 Ga. 593, 593–94, 322 S.E.2d 273 (1984) (petitioner held for two years without being brought to trial). The availability of

just such a judicial check reinforces this Court's absolute immunity conclusion. *See Burns v. Reed*, U.S. 478, 466, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1990) (identifying such "checks" as a factor to be considered in the functional analysis of whether absolute immunity should apply).

prosecutor acts more like the police or a witness, and not as a prosecutor, if she engages in wrongdoing like fabricating or tampering with evidence, *see Zahrey* 221 F.3d at 349–55 (prosecutors *can* be sued for fabricating evidence during an investigation, even though they ordinarily are immune from suits for their acts as advocates), or supplying false statements in an affidavit in support of an arrest warrant. *Kalina v. Fletcher,* 522 U.S. 118, 129–31, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *see also Holloway v. Brush,* 220 F.3d 767, 774–75 (6th Cir.2000) (Prosecutors are not absolutely immune when they perform administrative, investigative, or other functions; for example, when they give legal advice to the police, hold a press conference, or fabricate evidence); *Jones v. Cannon,* 174 F.3d 1271, 1281–82, 1284–85 (11th Cir.1999).

■ There is one last general area not protected by absolute immunity: that involving acts which are "clearly beyond the proper exercise of [a prosecutor's] authority and exceed any possible construction of the power granted to [her] office." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 354 (S.D.N.Y.2000) (quotes and cites omitted).

Plaintiff pleads no evidence-fabrication or tampering allegations against Higgins. And, she must concede that the decision and act of dismissing charges falls within the everyday activities of a prosecutor. "[A] prosecutor's decision whether or not to dismiss a charge, like a prosecutor's decision whether or not to prosecute, 'lies at the heart of the prosecutorial function.'" *Altman,* 28 F.Supp.2d at 53 (quoting *Guzman–Rivera,* 55 F.3d at 31).

Higgins is absolutely immune for failing to timely dismiss charges and urge Neville's release "whatever [her] alleged motives may have been." *Id.; see also Romer,* 119 F.Supp.2d at 354 (Absolute prosecutorial immunity from suit extends to litigation-related activities and decisions whether to prosecute, without regard to motive of prosecutor, bad faith, or presence of malice).

Finally, Neville makes much of the fact that Higgins' conduct, while post-arrest, was not in preparation for trial, but merely "administrative" or "investigative" in nature, and therefore should not be covered by absolute immunity. *See* doc. # 15 at 7. But merely labeling a phase of Higgins' activity as "not prosecutorial" is not controlling:

> We are aware of the cases that speak of absolute immunity applying to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." [*Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)]. Such language, however, does not serve to delineate the endpoint of immunity. Rather, it simply underscores the fact that absolute immunity does not apply to the investigatory duties of a prosecutor, that is, it serves to establish the starting point of such immunity. *See id.* at 273–74, 113 S.Ct. 2606 (noting that prosecutor is not entitled to absolute immunity when he "performs the investigative functions normally performed by a detective or police officer" and that prosecutor cannot be acting as advocate before there is probable cause). *See also Carter v. Burch,* 34 F.3d 257, 262 (4th Cir.1994) (noting that *Buckley* dealt with misconduct that occurred before the initiation of the judicial process), *cert. denied,* 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995).

*Parkinson,* 238 F.3d at 151.

Retaining and preserving evidence can easily be termed "administrative," for example, but courts have determined that it is not. *Id.* ("We hold that absolute prose-

cutorial immunity extends to the conduct of prosecutors after conviction while a direct appeal is pending, and that a prosecutor who retains evidence after a conviction while an appeal is pending is acting in her capacity as an advocate and is thus entitled to prosecutorial immunity"); *Charles v. Greenberg,* 2000 WL 1838713 at * 2–3 (E.D.La.2000) (unpublished) (§ 1983 plaintiff, released from prison in 1999 for a 1982 aggravated rape conviction after a DNA test on the "rape kit" from that crime revealed that he was not the perpetrator, could not sue prosecutors for their "opposition" to the plaintiff's efforts since 1992 to perform the test on the rape kit; opposition fell within their prosecutorial function and thus prosecutors were absolutely immune).

Similarly, post-arrest decisions and actions aimed at charging or dropping charges are prosecutorial, not administrative or investigative. *See Anderson,* 217 F.3d at 475–76 (prosecutor's refusal to charge arrestee while awaiting further evidence was a prosecutorial, not investigative, function; therefore, prosecutor is entitled to absolute immunity).

### 4. Individual Capacity State Law Claims

■■■ The Court held above that the Eleventh Amendment barred State law claims against Higgins (hence, the County) in her *official* capacity. But Neville also raises State law claims against her in her individual capacity. Yet, she fails to show how they survive Higgins's prosecutorial immunity. *Cf. Mosier v. State Bd. of Pardons & Paroles,* 213 Ga.App. 545, 546–47, 445 S.E.2d 535 (1994) (Plaintiff's State law claims against district attorney and his assistants, based upon assistants' sending letter to parole board describing aspects of plaintiff's crimes, giving opinion of his personality, and including copy of manuscript

featuring murder seized from his home, were barred by prosecutorial immunity; sending letter was act within scope of prosecutors' duties, intimately associated with judicial phase of criminal process). Therefore, those claims also fail as a matter of law. In light of this result, it is not necessary to reach Higgins's remaining (*e.g.,* qualified immunity) arguments.

### IV. CONCLUSION

Prosecutors exercise formidable and easily abusable power. Many prosecutors are professional, some are not. No one's guaranteed a saint. Congress sometimes tries to limit prosecutorial conduct. *See* 28 U.S.C. § 530(b) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State"), quoted in *U.S. v. Lowery,* 166 F.3d 1119, 1124 (11th Cir.), *cert. denied,* 528 U.S. 889, 120 S.Ct. 212, 145 L.Ed.2d 178 (1999).

Despite obvious injustices, courts are reluctant to peel back absolute immunity because without it "no limits could be placed on the ability of unhappy participants in the criminal process to harass a prosecutor and, ultimately, to cause the prosecutor to act simply in order to avoid the threat of future litigation, as opposed to vindicating the interests of the [S]tate in the independent exercise of prosecutorial judgment." *Sciance v. Muskingum County,* 2000 WL 1460076 at * 4 (S.D.Ohio 2000) (unpublished).

It therefore is true that absolute immunity "may 'leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.'" *McKeon,* 101 F.Supp.2d at 87 (quoting *Imbler,* 424 U.S. at 427, 96 S.Ct. 984). But such immu-

nity exists because it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Burns*, 500 U.S. at 484, 111 S.Ct. 1934 (quotes and cites omitted).

Defendants Melanie Higgins and Chatham County, Georgia, are immune from all of plaintiff Neville's claims. Accordingly, their motion to dismiss (doc. # 4) is *GRANTED.* Plaintiff's claims against them are *DISMISSED.* These defendants therefore are dropped from this case; all subsequent captions shall conform.